**Donnie McDONALD,
Petitioner-Appellant,**

v.

**Eddie LUCAS, et al.,
Respondents-Appellees.**

**No. 81–4245.**

United States Court of Appeals,
Fifth Circuit.

June 4, 1982.
Rehearing Denied July 23, 1982.

Wendell Hobdy Bryan, II, Amory, Miss., for petitioner-appellant.

William S. Boyd, III, Catherine Walker Underwood, Sp. Asst. Attys. Gen., Jackson, Miss., for respondents-appellees.

Before WISDOM, POLITZ and TATE, Circuit Judges.

WISDOM, Circuit Judge:

This action for habeas relief presents the question whether the petitioner, after refusing to sign a waiver of his *Miranda* rights, waived those rights by his course of

---

conduct. *Miranda v. Arizona*, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Since *Miranda*, the Supreme Court has held that an express waiver is not required. *North Carolina v. Butler*, 1979, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286. We hold, however, that the petitioner's course of conduct, including limited answers to questions, did not constitute an implied waiver of his *Miranda* rights.

## I.

In September 1978, the petitioner, Donnie McDonald, was arrested as a suspect in a burglary. He was brought to a jail in Monroe County, Mississippi. At the time he was 20 years old, had a ninth-grade education, and had served three years in the custody of the Mississippi Department of Corrections for a 1976 burglary conviction.

At the county jail, Sheriff L. F. Patterson advised McDonald of his *Miranda* rights to remain silent and to be afforded counsel. Then the sheriff asked him to sign a waiver of rights form. The accused refused to sign the waiver of rights form. Still, Sheriff Patterson questioned the accused about the burglary and elicited from him an inculpatory statement. That statement was later admitted in evidence at trial in the state court in the following way:

Q. Did you [Sheriff Patterson] then ask him whether or not he [the accused McDonald] took L. C. Cook's ring and went to Joe Roberts' store and sold it or pawned it?

A. I did.

Q. And what was the response?

A. He denied the fact of going there and pawning anything. And asked me to carry him back over there to Mr. Roberts' to have Mr. Roberts say that he had pawned something or had been there to pawn something.

Q. Did you later check with Mr. Roberts to determine whether or not he had been there and pawned the ring?

A. Mr. Roberts had already told me. He had told me before that, that it was Donnie McDonald that was there.

Q. Donnie McDonald denied to you that he ever went there?

A. That's correct.

Later, the Mississippi Supreme Court approved the admission of McDonald's statement.

There is conflicting evidence concerning the circumstances of the petitioner's arrest and custodial interrogation. At a hearing in the trial court, not in the jury's presence, McDonald stated that the sheriff had pushed his hat off his head and had slapped him. McDonald did admit that he had not been forced to say anything. The sheriff testified that he did not use any coercion, promises, or influence during the custodial interrogation. Specifically, he denied slapping McDonald's face. The state trial court found that no threats, promises, or physical violence upon the accused were made to induce or coerce him into making the statement in question. The record shows, however, that there were hostilities incident to McDonald's arrest and custodial interrogation. At the trial, Sheriff Patterson testified:

He [the accused] had his hat on and I knocked his hat off his head one time. He kept it pulled down over his eyes or something, and I asked him a couple of times to take it off and he didn't. I took the hat off of his head. And at that time he started—well, he had started hollering, since the time we picked him up, that he was going to sue us for false arrest and everything else. He was hostile from the time he was arrested.

In October 1978, McDonald was convicted of burglary and larceny in the Circuit Court of Monroe County. On appeal, the Mississippi Supreme Court affirmed the trial court without opinion. *McDonald v. State*, 374 So.2d 848 (Miss.1979).

McDonald brought a federal habeas corpus action in the United States District Court for the Northern District of Mississippi. The district court referred the proceeding to a magistrate. During a hearing, the magistrate asked McDonald why he had refused to sign the waiver form. McDonald

replied: "because I told him [the Sheriff] I didn't know about the [stolen] rings." The magistrate found that the petitioner had not asked to see an attorney nor had he refused to answer further questions. The district court approved the magistrate's recommendation and denied the petition for a writ of habeas corpus. McDonald now appeals to this court. He contends that the state trial court, in admitting in evidence the inculpatory statement made during an unlawful custodial interrogation, violated his constitutional rights, under *Miranda.*

## II.

The issue is whether McDonald waived his right to remain silent. In *Miranda,* the Supreme Court stated that as a constitutional prerequisite to the admissibility of statements made during custodial interrogation, a suspect must be warned, prior to questioning, that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to counsel. The customary procedure then is to obtain from the suspect an express waiver of his rights through his signature on a printed form. "Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice." 384 U.S. at 458, 86 S.Ct. at 1619.

In *Butler,* however, the Supreme Court held that *Miranda* does not require an express waiver of rights. In *Butler,* the question was whether an accused who admittedly was given and understood his *Miranda* rights had effectively waived those rights even though he refused to sign a written waiver form. The Court determined: "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but it is not inevitably either necessary or sufficient to establish waiver.... The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly in-

ferred from the actions and words of the person interrogated." 441 U.S. at 373, 99 S.Ct. at 1757. In *Butler,* the course of conduct indicating waiver was a statement by the accused that, while he wouldn't sign anything, he did wish to talk. The Court in *Butler* therefore held that the accused's inculpatory statements made during custodial interrogation without counsel were not inadmissible merely because of the absence of an explicit waiver of the right to counsel.

■ The principle elaborated upon in *Butler* is nothing new to this court. We anticipated the Supreme Court's decision in that case in *United States v. McDaniel,* 5 Cir. 1972, 463 F.2d 129, *cert. denied,* 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041. In *McDaniel,* we pointed out that "the mere refusal to sign a waiver does not automatically render inadmissible all further statements of the defendant." 463 F.2d at 135–6. If it is the petitioner's position that the inculpatory statement in question is per se inadmissible solely because he declined to sign the *Miranda* form, we reject that contention as we have done before. *United States v. Sawyer,* 5 Cir. 1974, 504 F.2d 878; *United States v. Devall,* 5 Cir. 1972, 462 F.2d 137.

## III.

The crucial question is not whether the lack of a signed waiver automatically precludes the admission of all further custodial statements. Rather, the crucial question is when can a waiver of rights be implied or inferred from the actions and words of the person interrogated. Here we go from the certainty of knowing that the lack of an express waiver does not determine inadmissibility per se to the uncertainty of what actions and words are sufficient to imply a waiver of constitutional rights. That focuses our analysis on the other end of the rights' spectrum.

The waiver of federal constitutional guarantees is a matter of federal constitutional law. *Henry v. Dees,* 5 Cir. 1981, 658 F.2d 406, 409. A substantive right is only as good as the procedural protections afforded that right. The constitutions of

many nations are wonderful showcases of stated rights. But what makes our constitution effective is that our procedural law gives our citizens the key to a storehouse of substantive rights. For example, in *Miranda*, the Supreme Court recognized that the principle that an individual may not be compelled to incriminate himself is worthless unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings. 384 U.S. at 458, 86 S.Ct. at 1619.

Waiver of constitutional rights is not to be lightly inferred. Years ago the Supreme Court announced the standard that ripened into *Miranda* : The burden is upon the state to demonstrate "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 1938, 304 U.S. 458 at 464, 58 S.Ct. 1019 at 1023, 82 L.Ed. 1461. In *Miranda*, in his part-concurring, part-dissenting opinion, Justice Clark rejected "the arbitrary Fifth Amendment" rule forbidding, in effect, custodial interrogation. He preferred the rule as stated in *Haynes v. Washington* :

> "a totality of circumstances evidencing an involuntary . . . admission of guilt." 373 U.S. [503] at 514, [83 S.Ct. 1336 at 1343, 10 L.Ed.2d [513] at 521].

384 U.S. at 502, 86 S.Ct. at 1642. Once again the Supreme Court has required adherence to a "totality of the circumstances" test in assessing the effect of constitutional waivers. *See, e.g., North Carolina v. Butler*, 1979, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286; *Boulden v. Holman*, 1969, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433.

The Court in *Butler* presents no guidelines for analyzing the circumstances in which "waiver can clearly be inferred from the actions and words of the person interrogated." 441 U.S. at 373, 99 S.Ct. at 1757. *Cf. United States v. Hopkins*, 5 Cir. 1970, 433 F.2d 1041 (statements admissible where the accused initiated conversations upon seeing federal agent get up to leave); *United States v. Menichino*, 5 Cir. 1974, 497 F.2d 935 (where accused freely volunteered incriminating statements.) In *Butler*, the course of conduct indicating waiver was a statement by the accused that, while he wouldn't sign anything, he did wish to talk. We do not read *Butler* to state that the accused's conduct in *Butler* was a clear case of an implied waiver. The Court merely vacated the judgment of the North Carolina Supreme Court holding that an express waiver is the only means by which after-acquired statements made during custodial interrogation may be admitted in evidence. The Court remanded the case to the North Carolina Supreme Court for that court to weigh the circumstances.

In the case before us, we begin with a finding that McDonald refused to sign a written waiver. Additionally, there is no evidence that there was an express oral waiver and, unlike *Butler*, the accused did not express a desire to talk. We have, then, if the word "silence" may be qualified, more silence as to intent than existed in *Butler*. Our presumption must be that McDonald did not waive his rights. The question then becomes whether the state has carried the heavy burden of showing that a waiver can be inferred through a course of McDonald's conduct.

A close review of the record fails to show a course of McDonald's conduct that would show a meaningful waiver of his constitutional rights. The argument put forth by the state and accepted by the district court focuses on the non-threatening actions of the sheriff, an absence of violence by the sheriff, and an understanding by the accused of his rights. The district court reached a conclusion which translates into this: If the accused understands his rights, is not threatened, is not physically harmed, and speaks, he is no longer entitled to his constitutional safeguards. That is not the law. If it were, an accused party would waive his rights simply by answering questions during custodial interrogations.

It is the accused's conduct that must be examined. Here McDonald refused to sign a waiver. Then, the appropriate question is this: Are there any words spoken or actions taken by him to infer a waiver in spite of his refusal to sign a written waiver? In this case, there is no evidence of words or

actions implying a waiver, except the statement made by McDonald which he now challenges. The state was required to demonstrate that McDonald said or did something constituting a waiver. This it did not do. Simply, the making of the inculpatory statement cannot alone indicate waiver. Otherwise, there could never be a question of whether a statement which an accused admittedly uttered was made without a valid waiver. *See Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628.

We hold that the state did not meet the heavy burden of showing that McDonald said or did something to indicate waiver.

## IV.

The question, whether there was sufficient evidence to support a finding that the statement was harmless, is a close one. The case against McDonald was totally circumstantial. There is testimony that a residential burglary occurred in which a ring was taken; that McDonald took the stolen rings to a pawn shop where he sold it; and that he was seen on the day of the burglary in the rural neighborhood of the burglary. The case was partially based on inconsistent statements the petitioner made to various individuals about where he had the ring and if he had sold it. Some of the testimony indicated that McDonald told the pawn shop owner he had found the ring at the local fair. A witness testified that McDonald had told him that he had won the ring in a "crap" game. The statement in question, in which the petitioner told the sheriff he knew nothing about the ring and that he had not taken it to any pawn shop, was, therefore, particularly damaging. It goes to the critical question of the credibility of the petitioner. We find then that it was not harmless error to admit in evidence the testimony elicited in violation of the petitioner's *Miranda* rights.

We REVERSE the decision of the district court and REMAND the matter for entry of an appropriate order directing the timely retrial of the petitioner or his release from confinement.