STATE OF CONNECTICUT *v.* SAMUEL HARRIS
(9800)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

 

Argued October 6—decision released November 23, 1982

*Donald D. Dakers,* assistant public defender, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Patrick Clifford,* assistant state's attorney, for the appellee (state).

PETERS, J. The sole issue on this appeal is whether the trial court erred in refusing to suppress oral statements elicited from the defendant in the course of a custodial interrogation. The defendant, Samuel Harris, was convicted, after a trial to a jury, of the offenses of criminal trespass in the

second degree,[1] assault in the third degree,[2] and attempted sexual assault in the first degree.[3] Alleging that his oral statements to the police were procured in violation of the privilege against self-incrimination contained in the fifth amendment to the United States constitution, the defendant urges us to set aside the judgment against him and to order a new trial.

The jury might reasonably have found the following facts. At approximately 6:45 p.m. on October 15, 1976, the complainant, an adult woman, was relaxing in her one-room apartment on Edgewood Avenue in New Haven. She had just returned from work and had removed her outer garments. Hearing a noise in the hall outside her apartment, she opened her door to investigate, saw nothing, and then shut the door. Moments later she reopened the door and a man, whom she recognized as a former resident of her building and whom she later identified as the defendant, pushed into her apartment. In entering the room, he struck the complainant and knocked her down. Then he removed his trousers and threatened to kill her unless she took off her clothes. When she refused, he tore her undergarments from her. The defendant then went to the kitchen, returning momentarily with a knife with which he threatened and then cut the complainant. Again the defendant went to the

---

[1] Criminal trespass in the second degree was a lesser included offense within the first count of the information, which had charged the defendant with burglary in the first degree in violation of General Statutes § 53a-101 (a) (2).

[2] Assault in the third degree was a lesser included offense within the third count of the information, which had charged the defendant with assault in the second degree in violation of General Statutes § 53a-60 (a) (2).

[3] The second count of the information had charged the defendant with the attempted sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) and 53a-70 (a).

kitchen. The complainant took advantage of his second absence to put on her housecoat and leave the apartment.

She descended to the street and entered a liquor store across from her building. From there she notified the police of what had happened. When they arrived on the scene, the complainant pointed to where the defendant, wearing only yellow trousers, was standing behind a tree. She identified him as the man who had attacked her. The defendant fled and was apprehended hiding in tall grass to the rear of the liquor store.

The defendant made a statement to detectives at the New Haven police department while in custody that evening. He there admitted that he had visited the complainant's building earlier in the evening, to visit a friend. He would not reveal the friend's name. He said that a woman had invited him into her apartment for a drink. He added that after some drinking his mind had gone blank. The next thing he recalled was running from the apartment and hiding.

The defendant does not question the sufficiency of the evidence to support the guilty verdicts. He maintains instead that the trial court erred in admitting into evidence the oral statement made by him to the police on the night of his arrest. Specifically, he claims that the state failed to meet its burden of establishing that the defendant knowingly and intelligently waived his fifth amendment privilege against self-incrimination, as required by *Miranda* v. *Arizona*, 384 U.S. 436, 475, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).[4]

[4] At oral argument, counsel for the defendant expressly acknowledged that no claim was being advanced (a) that the defendant had been denied his sixth amendment right to counsel, (b) that the absence of defense counsel during his interrogation by police had

The circumstances surrounding the defendant's giving of the challenged statements to the police were described at a suppression hearing held outside of the presence of the jury. At that hearing, the only witness was detective Michael Sweeney, one of the officers who had conducted the custodial interrogation of the defendant.[5] Detective Sweeney testified to the following: At about 8 p.m. on October 15, 1976, he and another New Haven police officer brought the defendant from a cell where he had been detained to an interview room in the police station. There Sweeney informed him of his *Miranda* rights by reading them from a standard form used by the New Haven police. After each sentence was read to the defendant, he was asked whether he understood and he replied that he did. When the defendant had been informed of all of his rights, he was asked to sign a waiver form but refused to do so. Nonetheless, when Sweeney then inquired whether the defendant wanted to talk about the incident for which he was arrested, he expressly agreed to do so. The defendant then proceeded to make the oral statement placing him at the scene of the crime. Although the defendant was unwilling to make a written statement before consultation with a lawyer, at no time during the making of his oral statement did the defendant request a lawyer or express a desire to terminate the questioning.

impaired the defendant's fifth amendment privilege against self-incrimination, or (c) that the defendant's statement was obtained by coercion in violation of his fourteenth amendment right to due process of law. We therefore do not consider these issues.

[5] Although detective Michael Sweeney testified that another police officer was present during the interview, neither the other officer nor the defendant testified as to what transpired during it. The suppression hearing took place after the trial had already begun, and was requested by defense counsel only after detective Sweeney had taken the stand to testify as part of the state's case in chief.

Detective Sweeney also gave evidence concerning the defendant's physical and mental condition at the time of his interview.[6] That testimony indicated that the defendant did not then appear to be under the influence of alcohol or of drugs and that he appeared to understand what was being said to him. Sweeney testified further that the defendant was not subjected either to threats or to force nor was he offered any reward in return for making a statement. Sweeney conceded, however, that during the interview the defendant was "acting very strange" and that "[h]e would continually talk. He told me he wanted to marry a certain woman. And I asked him if he would just answer my questions. He kept rambling on about this woman. He said he didn't do anything wrong."

The admissibility of the defendant's confession under these circumstances is governed by well-established principles. In order to prove that the defendant has effectively waived his privilege against self-incrimination, the state must prove, by a preponderance of the evidence; *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Wilson,* 183 Conn. 280, 286–87, 439 A.2d 330 (1981); *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); that the defendant knowingly and intelligently waived his constitutional right to remain silent. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Waiver is not conclusively established by

---

[6] The arresting officer testified that at the time of the arrest, approximately one hour before the interview, the defendant had appeared to be somewhat intoxicated, although there was no smell or sign of alcohol about him.

demonstrating that *Miranda* warnings were given and understood. *State* v. *Wilson,* supra, 284; see *United States ex rel. Abubake* v. *Redman,* 521 F. Sup. 963, 975 (D. Del. 1981). Nor is it conclusively rebutted by refusal to sign a form waiving *Miranda* rights; *North Carolina* v. *Butler,* supra, 373; *State* v. *Derrico,* supra, 163–64; nor by refusal to sign a written statement in the absence of legal counsel. *State* v. *Frazier,* 185 Conn. 211, 225, 440 A.2d 916 (1981). In the absence of an express waiver, the state bears the heavy burden of demonstrating, as a matter of fact, that "waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina* v. *Butler,* supra, 373. Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. *State* v. *Frazier,* supra, 219.

Our examination of the record in this case compels the conclusion that the trial court did not err in admitting the defendant's statements into evidence. The testimony adduced by the state showed, without contradiction, that the defendant, having understood his rights, expressly agreed to make an oral, although not a written, statement. Under these circumstances, the defendant's expressed willingness to speak constituted an explicit affirmative act evidencing waiver, which the court could reasonably find persuasive despite the defendant's refusal to sign the waiver form. The defendant's affirmative act distinguishes this case from *State* v. *Wilson,* supra, 286, where there was a total absence of any conduct indicating waiver on the part of the defend-

ant. Refusal to sign a waiver form or a written statement, although some evidence of the absence of waiver, may be outweighed by affirmative conduct indicative of a knowingly and intelligently made decision not to remain silent, as we have recently held in *State* v. *Frazier, supra,* 226, and *State* v. *Derrico, supra,* 163–64.

In this connection, it may be helpful to specify what the record does not show. There was no evidence whatsoever contraverting detective Sweeney's account of the interview at which the challenged statements were made. The defendant never denied that he understood the warnings given to him, nor did he claim a lack of familiarity with criminal proceedings.[7] While the defendant had no obligation to testify himself or to offer testimony, a court cannot supply evidence that is lacking. *United States* v. *Frazier,* 476 F.2d 891, 897 (D.C. Cir. 1973); *United States* v. *Hayes,* 385 F.2d 375, 378 (4th Cir. 1967), cert. denied, 390 U.S. 1006, 88 S. Ct. 1250, 20 L. Ed. 2d 106 (1968). Nor were there any allegations of facts that have traditionally cast doubt upon a finding of knowing and voluntary waiver: e.g., that the interrogation was lengthy or preceded by an incommunicado interrogation; *Miranda* v. *Arizona, supra,* 476; that the defendant lacked education; *Davis* v. *North Carolina,* 384 U.S. 737, 742, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966); that the defendant exhibited weakness of will or mind; *Fikes*

---

[7] During the hearing on sentencing, counsel for the defendant represented that the defendant had been convicted of attempted robbery in the first degree in New York in 1970. In Connecticut, he had been charged once before with attempted sexual assault in the first degree and was convicted of two counts of breach of peace stemming from that charge in 1976. There has been no finding that he received his *Miranda* warnings at those times, however, and the fact of the defendant's prior familiarity with criminal proceedings was not considered by the trial court in its ruling on the motion to suppress.

v. *Alabama,* 352 U.S. 191, 196–97, 77 S. Ct. 281, 1 L. Ed. 2d 246, reh. denied, 352 U.S. 1019, 77 S. Ct. 553, 1 L. Ed. 2d 561 (1957); or that there were hostilities incident to the defendant's arrest or custodial interrogation. *McDonald* v. *Lucas,* 677 F.2d 518, 519 (5th Cir. 1982).

Since the evidence reasonably demonstrated an affirmative act of waiver, the defendant can only succeed in his attack on the admissibility of his statements if the trial court should have found that waiver to have been involuntary because of the defendant's impaired emotional capacity to make a valid waiver. The testimony before the trial court fell far short of demonstrating such a lack of capacity. A distraught emotional state, arising out of the circumstances leading to the arrest, or out of the voluntary ingestion of alcohol or drugs, does not prevent a finding of voluntariness or of knowing and intelligent waiver.[3] See *State* v. *Stankowski,* 184 Conn. 121, 134, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Derrico,* supra, 163–64. In this case, the fact that the defendant was, at the interview, "acting very strange" and that he "rambled" would similarly not suffice to invalidate the trial court's finding that his waiver of his constitutional rights was knowing and intentional.

There is no error.

In this opinion the other judges concurred.

---

[3] Although the arresting officer testified that at the time of the arrest, approximately one hour before the interview, the defendant appeared to be somewhat intoxicated, the trial court was entitled to conclude that the defendant was not intoxicated at the time of the interview.