## STATE OF CONNECTICUT *v.* JESSIE MUNOS ZAYAS
## (2685)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued December 6, 1984—decision released February 19, 1985

*Joseph G. Bruckman,* assistant public defender, with whom, on the brief, were *Joette Katz,* public defender, and *Margaret Hayman,* assistant public defender, for the appellant (defendant).

*Lawrence J. Tytla,* deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, *Martin Rader* and *John M. Massameno,* assistant state's attorneys, for the appellee (state).

HULL, J. The defendant, Jessie Munos Zayas, appeals[1] from the judgment of the trial court upon his conviction, after a jury trial, on charges of threatening in violation of General Statutes § 53a-62, reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a) and carrying a pistol without a permit in violation of General Statutes § 29-35. Zayas raises four major claims of error:[2] (1) the failure of the court to instruct the jury on self-defense as a justification for the offenses of threatening and reckless endangerment in the first degree;[3] (2) the denial of the defendant's motion to suppress; (3) the denial of his motion for a mistrial or, in the alternative, to

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

[2] The defendant raised a total of eight claims of error in this appeal. In addition to the claims discussed in the text herein, the defendant raises three claims of error as to the court's instructions to the jury. One of those claims was withdrawn at oral argument. We find the remaining two to be without merit. The court's instructions were fair overall. *State* v. *Storlazzi,* 191 Conn. 453, 466, 464 A.2d 829 (1983).

The remaining claim of error relates to the trial court's refusal to admit six photographs into evidence. That decision was well within the court's broad discretion in such matters. *State* v. *Asherman,* 193 Conn. 695, 722, 478 A.2d 227 (1984); *State* v. *Piskorski,* 177 Conn. 677, 699, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

[3] General Statutes § 53a-19 (a) states: "Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

strike testimony; and (4) the denial of his motion for judgment of acquittal on the charge of carrying a pistol without a permit. We conclude that the court did not err.

Late on the evening of October 31, 1978, the defendant and his companion, Angela Novicky, were returning home from a halloween party. As they walked down Post Office Street in Danbury they came upon three men, in costume, walking down the street on the opposite sidewalk. One of the men was singing, and the defendant shouted to him to "shut up." From that point, there are several widely different versions of what occurred. If the jury accepted the defendant's trial testimony as credible, they could have found the following: The defendant and Novicky crossed the street and, while Novicky continued on her way, the defendant turned to confront the three men who had begun to shout at him. One of the men, later identified as Bassam Sabbagh, pulled out a gun and the defendant grabbed Sabbagh's wrist so as to direct the gun at the ground. One of Sabbagh's companions, Gary Goetz, then struck Zayas and the three men then beat him unconscious before leaving in a car.

Novicky had, in the interim, gone to a nearby shop where she called the police who arrived a short time later. When they arrived, the police found the defendant, unconscious, on the ground with a .25 caliber Colt automatic pistol between his legs. The gun was jammed when the police found it so that it would not fire.

The defendant was taken to Danbury Hospital and was subsequently charged with the offenses which are the subject of this appeal. The police also picked up Sabbagh, Goetz and Mark Neville, the third man, later that night.

On November 1, 1978, Officers Vincent Pannozza and Robert Lollie questioned Zayas at the hospital. They

asked him if he was willing to speak to them and, after he agreed to do so, Pannozza read him his rights as required by *Miranda* v. *Arizona,* 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Zayas then stated that he understood his rights and he signed the card from which they had been read. Pannozza then asked the defendant what had happened the night before and Zayas narrated the entire incident. Zayas' statement at that time, if Pannozza's testimony is believed, directly contradicts Zayas' trial testimony.[4]

After Zayas was released from the hospital, he was taken to the Danbury police station where, while awaiting arraignment, he again spoke to police. This second statement was made on November 2, 1978, to Detective John Merullo. Zayas had asked Merullo what charges he faced. Merullo read the report on the incident and answered the defendant. He then asked Zayas about his injuries and the events of the night in question. Zayas responded with a narrative very similar to the one he had given Pannozza the day before.

Prior to his trial, the defendant filed a motion to suppress statements made by him to police officers after his arrest. That motion was denied and the case proceeded to trial.

After the direct testimony of Pannozza regarding his interview with Zayas, the defendant moved to compel production of Pannozza's rough notes, made at the time of the interview, pursuant to Practice Book § 752.[5] Those notes, which Pannozza claimed had been incor-

---

[4] Zayas told Pannozza that he had found the gun on the street earlier, that he had picked it up and that he did not remember pulling it out during the incident. At trial, he expressly denied that he had found the gun earlier.

[5] Practice Book § 752 states: "After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

porated into his official report, had since been des-
troyed. Consequently, the defendant moved for a mis-
trial or, in the alternative, to strike Pannozza's
testimony pursuant to Practice Book § 755.[6] That
motion was denied.

At the close of the trial, the court also denied the
defendant's motion for judgment of acquittal on the
charge of carrying a pistol without a permit. That
motion was premised on the defendant's argument that
such a charge requires that the pistol be operable and
that the pistol in this case could not be fired.

The defendant requested that the court instruct the
jury on self-defense as a justification for all of the
crimes with which he was charged.[7] The court denied
that request and the jury returned verdicts of guilty
on all charges. The defendant was sentenced to con-
current terms of 360 days imprisonment on the charges
of threatening and reckless endangerment and to two
to five years imprisonment on the charge of carrying
a pistol without a permit. He has since served his sen-
tence.

I

"Self-defense is not an affirmative defense under our
statutes. It may, however, be asserted as a defense by
way of justification pursuant to § 53a-16 of the Gen-
eral Statutes. The burden of proof applicable to the
claimed defense is recited in § 53a-12 (a) of the Gen-
eral Statutes, which provides: '(a) When a defense other

---

[6] Practice Book § 755 states: "If the prosecuting authority elects not to
comply with an order of the judicial authority to deliver to the defendant
any statement of a witness who has testified or such portion thereof as
the judicial authority may direct, the judicial authority shall strike from
the record the testimony of the witness, and the trial shall proceed unless
the judicial authority, in his discretion, upon motion of the defendant, deter-
mines that the interests of justice require that a mistrial be declared."

[7] The defendant has since withdrawn his claim to such an instruction as
to the charge of carrying a pistol without a permit.

than an affirmative defense, *is raised at a trial,* the state shall have the burden of disproving such defense beyond a reasonable doubt.' (Emphasis added.)" (Footnote omitted.) *State* v. *Cassino,* 188 Conn. 237, 241, 449 A.2d 154 (1982). " 'A defendant must, however, assert a recognized legal defense before such a charge will become obligatory.' *State* v. *Rosado,* [178 Conn. 704, 707, 425 A.2d 108 (1979)]. Requests to charge have been denied where such admissions have been lacking. See *State* v. *Hawkins,* 173 Conn. 431, 436, 378 A.2d 534 (1977) (entrapment); *State* v. *Avery,* 152 Conn. 582, 584, 211 A.2d 165 (1965) (entrapment). We have held, with respect to affirmative defenses, 'that only when evidence indicating the availability of one of the . . . legally recognized defenses is placed before a jury is a defendant *entitled* as a matter of law to a theory of defense instruction.' (Emphasis in original.) *State* v. *Rosado,* supra, 708; *State* v. *Hawkins,* supra, 435–37. Although this case involves a nonaffirmative defense issue, similar reasoning nonetheless applies." *State* v. *Cassino,* supra, 243; *State* v. *Hardwick,* 1 Conn. App. 609, 619, 475 A.2d 315, cert. denied, 193 Conn. 804, 476 A.2d 145 (1984).

In the present case, the defendant never raised the self-defense issue at trial. The issue was not expressly raised until the request to charge the jury on self-defense was made. Nor was the issue raised by the defendant's testimony. In fact, such a charge would directly contradict the defendant's trial testimony which was to the effect that he never possessed the gun and that, although he might have touched it, he "was holding [Sabbagh] where he would not be able to point the gun at me. *He* was pointing the gun at the ground." (Emphasis added.)

The only evidence supportive of the defendant's self-defense claim was the prosecution's own evidence, contradicting the defendant's version of the incident, to

the effect that Zayas pulled the gun and threatened Sabbagh and his companions with it. The defendant expressly denied having the gun. When the jury instruction has the effect of contradicting the defendant's own evidence, he is not entitled to it. *United States* v. *Crowder,* 543 F.2d 312, 317 (D.C. Cir. 1976), cert. denied, 429 U.S. 1062, 97 S. Ct. 788, 50 L. Ed. 2d 779 (1977); *State* v. *Cassino,* supra, 244. While the defendant is entitled to have the state disprove that he acted in self-defense once that issue is raised, the defendant is not entitled to ambush the state with such a claim after the state no longer has the ability to provide evidence rebutting that claim.

II

The defendant next claims that the court erred in refusing to declare a mistrial or to strike the testimony of Pannozza pursuant to Practice Book § 755[8] as a sanction for his failure to produce his rough notes as required by Practice Book § 752.[9] We conclude that the court did not err in denying that motion.

" 'Whether or not sanctions for nondisclosure should be imposed depends in large measure upon the extent of the Government's culpability for failure to make disclosable material available to the defense, on the one hand, weighed against the amount of prejudice to the defense which resulted, on the other.' *United States* v. *Miranda,* 526 F.2d 1319, 1324 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S. Ct. 69, 50 L. Ed. 2d 82 (1976). Applying a balancing test, the United States Court of Appeals for the Second Circuit held that the trial court's ruling denying the defendant's motion to suppress the testimony of a witness because a tape recording of a conversation between her and the defendant had been lost was not reversible error, for

---

[8] See footnote 6, supra.

[9] See footnote 5, supra.

that would be a heavy sanction to the government for loss of a piece of evidence *on which there was other primary evidence.* Id. In *United States* v. *Perry,* 471 F.2d 1057 (D.C. Cir. 1972), the court recognized that this balancing approach gives broad discretion to the trial court." (Emphasis added.) *State* v. *Shaw,* 185 Conn. 372, 386, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982); *State* v. *Meyers,* 193 Conn. 457, 467, 479 A.2d 199 (1984).

In *State* v. *Meyers,* supra, the court held that "[t]here is absolutely nothing in the record from which we can infer that the tape recorded statement might have contained any inconsistency. While we repeat that we do not countenance the destruction of verbatim statements, in the particular circumstances of this case, we find no error in the trial court's denial of the defendant's motion to strike the victim's testimony." Id., 469. The same result is called for in this case. Although Pannozza's actions cannot be condoned, neither should they be sanctioned where it is a reasonable conclusion, from his testimony, that the substance of the lost notes was incorporated into his official report only a short time later.

### III

The defendant's third claim of error relates to the court's denial of his motion to suppress Zayas' statements to Pannozza, Lollie and Merullo. We conclude that the court was correct in allowing those statements into evidence.

Zayas claims that the statements which he made on November 1, 1978, and November 2, 1978, were made without an effective waiver of his fifth amendment constitutional right to remain silent. "The admissibility of the defendant's confession under these circumstances is governed by well-established principles. In order to prove that the defendant has effectively waived his priv-

ilege against self-incrimination, the state must prove, by a preponderance of the evidence; *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Wilson,* 183 Conn. 280, 286–87, 439 A.2d 330 (1981); *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); that the defendant knowingly and intelligently waived his constitutional right to remain silent. *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979); *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Waiver is not conclusively established by demonstrating that *Miranda* warnings were given and understood. *State* v. *Wilson,* supra, 284; see *United States ex rel. Abubake* v. *Redman,* 521 F. Sup. 963, 975 (D. Del. 1981). Nor is it conclusively rebutted by refusal to sign a form waiving *Miranda* rights; *North Carolina* v. *Butler,* supra, 373; *State* v. *Derrico,* supra, 163–64; nor by refusal to sign a written statement in the absence of legal counsel. *State* v. *Frazier,* 185 Conn. 211, 225, 440 A.2d 916 (1981). In the absence of an express waiver, the state bears the heavy burden of demonstrating, as a matter of fact, that 'waiver can be clearly inferred from the actions and words of the person interrogated.' *North Carolina* v. *Butler,* supra, 373. Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. *State* v. *Frazier,* supra, 219." *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 634 (1982).

In *State* v. *Harris,* supra, the defendant, upon being advised of his rights, agreed to make an oral, although not a written statement. This, the court found, was sufficient to constitute a waiver. Similarly, Zayas was

asked to make an oral statement on November 1, and he agreed to do so. He was immediately read his rights thereafter. We conclude that this constituted a valid waiver. Zayas easily could have recanted his agreement to make a statement upon being told of his rights. His course of conduct was more than the mere silence presented to the court in *State* v. *Wilson,* 183 Conn. 280, 439 A.2d 330 (1981), wherein the court found no valid waiver.

Similarly, Zayas' statement to Merullo on November 2 was covered by the waiver he made the day before. See *Biddy* v. *Diamond,* 516 F.2d 118, 122 (5th Cir. 1975), cert. denied, 425 U.S. 950, 96 S. Ct. 1724, 48 L. Ed. 2d 194 (1976).[10] Thus, the defendant's right to remain silent was not violated in this case.[11]

---

[10] The defendant also claims that his sixth amendment constitutional right to counsel was violated by this second conversation he had with police because an information had been lodged against him by the time that second conversation occurred. We do not consider this claim as there is nothing in the record to substantiate the defendant's assertion regarding when the information was filed.

[11] The defendant also raises, as a second argument concerning his *Miranda* rights, the claim that the trial court improperly placed the burden of proving a violation of those rights upon him rather than placing the burden of compliance with *Miranda* upon the state. We conclude that this argument is without merit.

The testimony of Officers Pannozza, Lollie and Merullo at the hearing on the defendant's motion to suppress was uncontroverted. The defendant did not, in any way, dispute the officers' claims as to their compliance with *Miranda* and the officers testified that they fully complied therewith.

The court stated that "the defendant has [failed] to make a prima facie showing that there is any merit to his motion . . . and therefore the state has no burden to go forth and show and justify the motion." The defendant took exception to this comment but he did not take the witness stand, nor did he make an offer of proof or offer any other evidence on the subject. Under these circumstances, we conclude that the court's statement did not shift the burden of proof to the defendant with the result that he was not prejudiced thereby. "When the court rules on a motion to suppress without detailing the facts supporting its decision, an appellate court may look to the evidence produced in support of the ruling. See, e.g., *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984)." *State* v. *Martin,* 2 Conn. App. 605, 614, 482 A.2d 70 (1984). We hold that the court was correct in con-

## IV

The defendant's final claim of error relates to the court's denial of his motion for judgment of acquittal on the charge of carrying a pistol without a permit. That motion was predicated on the defendant's claim that because it was jammed, the gun found with Zayas was not a "firearm" as defined by General Statutes § 53a-3 (19) and, therefore, could not be a "pistol" within the meaning of General Statutes § 29-35.

The defendant asserts that the definition of "pistol" or "revolver," as the term is used in General Statutes § 29-35, is provided by General Statutes § 29-27 which refers to a pistol as a "firearm." "Firearm" is, in turn, defined in General Statutes § 53a-3 (19) as a "weapon, whether loaded or unloaded from which a shot may be discharged." Thus, the defendant claims that because the gun was jammed when found by police it was not a weapon "from which a shot may be discharged," and, therefore, he should have been acquitted of carrying a pistol without a permit.

Officer Andrew Woods, who had extensive experience with firearms and who had inspected and test-fired the gun found with Zayas, testified that the gun could have jammed when Zayas attempted to cock it or when it fell to the ground. The jury could reasonably have concluded that the gun was operable when Zayas held it. Thus, the court was correct in refusing to grant the defendant's motion for acquittal. " '[T]he issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evi-

cluding that the state did not have to go any further; not because the defendant had failed to make a "prima facie" case, but because there was sufficient credible testimony before the court for it to find by direct testimony and inference from Zayas' course of conduct that the state had met its burden of proving compliance with the *Miranda* requirements.

dence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' " *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979); *State* v. *Payne,* 186 Conn. 179, 181–82, 440 A.2d 280 (1982); *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 749 (1980); *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978).

There is no error.

In this opinion the other judges concurred.