STATE OF CONNECTICUT *v.* STANLEY THOMPSON
(2964)

HULL, BORDEN and SPALLONE, Js.

Argued May 9—decision released September 3, 1985

*Richard T. Meehan, Jr.,* with whom, on the brief, was *James J. Ruane,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BORDEN, J. The defendant was convicted by a jury of manslaughter in the second degree in violation of General Statutes § 53a-56 (a). In this appeal from that conviction, he raises several claims of error: (1) the partial denial of his pretrial motion to suppress his statements to the police; (2) the denial of his motion for judgment of acquittal and postverdict motions for acquittal and mistrial; (3) error in certain evidentiary rulings; and (4) error in the court's charge to the jury.

We find no error in the denial of his motions for acquittal. We do find error, however, in the pretrial

suppression ruling, and do not reach his other claims because it is not clear that they will arise again on retrial.[1]

We first briefly consider the defendant's claim, raised in the context of the denial of his motions for judgment of acquittal, that the state did not produce enough evidence to establish his guilt beyond a reasonable doubt, even with his challenged statements to the police. We disagree.

The defendant had babysat for the three year old victim, Michelle Anderson, on the evening before her death, which occurred at the Bridgeport Hospital the following morning. As the defendant accurately states in his brief, the state's theory was that the child died from injuries secondary to blunt force trauma to her abdomen. There was evidence that the child was not injured prior to being left in the defendant's care, and was in distress and vomiting when her mother returned. The defendant's statements indicate that, while in his care, the child fell several times, he had used some force on her, and she had vomited and moaned. The surgeon who operated on the child testified that the blunt force causing the child's internal injuries was inflicted during the time the child was in the defendant's care, and that her injuries were inconsistent with accidental trauma such as falling. The cumulative effect of the evidence, together with the reasonable inferences drawn therefrom, was sufficient to justify the verdict. *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984).

---

[1] Although we decide that there was sufficient evidence to convict the defendant with his statements, and although we also decide that his statements should have been suppressed, we do not speculate as to whether there was sufficient evidence to convict without those statements. This issue has not been briefed and argued. Furthermore, in fairness the state should on retrial be afforded an opportunity to fill this evidentiary gap, which it had no notice or opportunity to confront until this time.

We now turn to the claim of the defendant that the court erred in partially denying his suppression motion. The defendant took exception to this ruling and the evidence was later admitted at trial over his objection.

The defendant raises four alternative claims of error with respect to the suppression ruling. He claims: (1) he did not effectively waive his *Miranda*[2] rights prior to making the statement in question;[3] (2) there were insufficient intervening events between the illegal arrest and his statement to dissipate any taint upon that statement; (3) the oral and written statements were tainted by earlier fifth amendment violations; and (4) there was not probable cause for his arrest. The dispositive claim is that he did not knowingly and intelligently waive his *Miranda* rights.

The trial court did not file a written memorandum of decision detailing the facts in support of its conclusion. We may, therefore, look to all of the evidence produced in support of that ruling. *State* v. *Martin,* 2 Conn. App. 605, 614, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). That evidence is as follows: In the early morning, Joan Anderson brought her daughter to the Bridgeport Hospital. This child had a history of physical abuse. On this occasion, she had multiple bruises on her lower abdomen and gen-

---

[2] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] At oral argument, the state argued those statements should be deemed admissible because the defendant was not in custody. *Oregon* v. *Mathiason,* 429 U.S. 492, 495-99, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *State* v. *Ostroski,* 186 Conn. 287, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982). The state, however, did not seek to present this issue as an alternate ground upon which to sustain the judgment by filing a statement pursuant to Practice Book § 3012 (a). Because this is a factual determination within the province of the trial court, which was not properly preserved, we decline to review this claim in this appeal. *State* v. *Martin,* 2 Conn. App. 605, 614, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985).

ital area which ultimately led to her death in surgery a few hours later. After the attending physician at the hospital diagnosed the child's case as one of child abuse and initiated the appropriate referrals for investigation, the mother phoned the defendant at his home in Mount Vernon, New York, at 6 a.m. to notify him of the situation. He immediately traveled to the hospital where he was met by a hospital social worker.

The social worker testified that she interviewed the defendant and he informed her that he babysat for the child for two hours the preceding evening. The defendant is the father of Joan Anderson's other child and he occasionally babysat while Anderson attended night school. He related to the social worker that the child fell off a chair and vomited during this period of time. The social worker notified Detective Paul Bogardis of the Bridgeport police department that the defendant was present in her office. Bogardis went to the hospital with Detective Leo Krusinski to interview the defendant.

Upon meeting the defendant at the hospital, the two detectives requested that he accompany them to the police department and he agreed. He was questioned by Bogardis from his arrival at headquarters at 9 a.m. until 1 p.m. Bogardis began taking a written statement at 11:05 a.m. and, in the midst of this process, he received a phone call from the hospital reporting the child's death at 11:15 a.m. He pursued the interrogation after receiving this call and completed the statement at 1 p.m. The trial court suppressed this statement because no *Miranda* warnings had been given.

Bogardis testified that he completed the arrest report indicating the arresting officers as "Captain Fabrizi, et al.," meaning that Captain Anthony Fabrizi, Lieutenant Frank Nerkowski and he had participated in the

arrest. The time of arrest indicated is 2 p.m. Fabrizi testified that after Bogardis completed his interrogation, he confronted the defendant and informed him that he was lying. This confrontation occurred in a small interrogation room. Fabrizi then arranged for a psychological stress evaluator (PSE) test and obtained the defendant's signature on a written consent form. The defendant took the test but the machinery malfunctioned. Nevertheless, Fabrizi confronted the defendant with purported test "results" which he told the defendant proved that the defendant was lying. At this juncture, the defendant admitted that during the time he was babysitting, he slapped the child and she fell, hitting her head on the door jamb. He also admitted forcibly placing her on the toilet several times because she soiled herself and would not stay on the toilet. Fabrizi concluded that he had probable cause to arrest the defendant and placed him under arrest at 2 p.m. The court suppressed "any questions and answers which may have been elicited on the psychological stress evaluator test" because of the lack of *Miranda* warnings. The parties understood this order to include statements made to Fabrizi during the course of his interrogation.

Fabrizi testified that upon receiving these admissions from the defendant, he obtained the defendant's verbal consent to give a written statement. He thereupon turned the defendant over to Nerkowski for the purpose of taking the statement. According to Fabrizi, Nerkowski was probably present when the defendant made these admissions to him.

Nerkowski testified that he was assigned to take a statement from the defendant. He first obtained a report from Bogardis in the presence of the defendant with respect to prior statements made. He then took the defendant into an interrogation room and read him the *Miranda* warnings from a card. This was the

first time that the *Miranda* warnings were given by any of the three arresting officers. After reading the rights, Nerkowski obtained the defendant's signature on a "Notification of Rights" form. This form was referred to by Nerkowski in court as a "waiver." Nerkowski testified that the city of Bridgeport has since obtained a new form which specifically includes a notice regarding waiver of rights. With regard to the form used, he testified: "This is a notification of rights form. It's called a waiver. Mr. Thompson signed it and I witnessed it." When the defendant signed this form, Nerkowski understood that he was waiving his constitutional rights. After the defendant acknowledged that he understood each of his rights, and after he signed the notification form, there was no further discussion of rights or waiver of rights.

Nerkowski then proceeded to engage the defendant in an interview which lasted approximately one half hour. The substance of this interview was then incorporated into a written statement typed by Nerkowski in a question and answer format. Preparation of this written statement consumed approximately forty minutes. After the document was typed, the defendant read it, deleted a portion of a sentence and signed it. Incorporated in this statement is the question: "Are you making this statement voluntarily and of your own free will?" and the defendant's answer: "yes."

The defendant also testified at the suppression hearing. Cf. *State* v. *Pellegrino,* 194 Conn. 279, 289 n.17, 480 A.2d 537 (1984) (potentially relevant evidence regarding waiver lacking due to defendant's failure to testify). He was born, raised and educated to age sixteen in Jamaica. The record of his testimony indicates numerous instances of either his inability to understand questioning or the attorneys' and court's inability to understand his responses. When presented with his written statement and the notification of rights form,

he demonstrated his ability to read. On cross-examination, he admitted signing the written statement after it was completed and indicated that it was done voluntarily. The testimony of all of the witnesses, including the defendant, indicates that he was obedient and fully cooperative throughout the entire period of interrogation.[4]

The court denied the motion to suppress with regard to these oral and written statements of the defendant to Nerkowski. The court found that "the defendant had knowingly and voluntarily waived his rights prior to the giving of that statement. That statement . . . shows that the defendant . . . even corrected part of the statement to show a distinction between how the young child was being placed on the commode. The court finds that he reads well. He understands well and that there was no reason to find that he did not knowingly, voluntarily waive his Fifth Amendment right." The defendant took an exception to this ruling. The statement was subsequently admitted at trial as a full exhibit and Nerkowski was permitted to read it verbatim to the jury.

The state does not claim that the defendant expressly waived his *Miranda* rights. The state relies upon the familiar rule established in *North Carolina* v. *Butler,* 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979), that a valid waiver may be inferred from the

---

[4] We recognize that questions of credibility and "the version of the facts advanced by the defendant" are matters within the province of the trier of fact. *State* v. *Perry,* 195 Conn. 505, 516, 488 A.2d 1256 (1985). We therefore set forth only those uncontroverted aspects of the defendant's testimony which are essential to a full understanding of the waiver issue. See id., n.8. In such matters, the trial court's "discretion must be 'exercised in accordance with constitutional standards of due process.' " *State* v. *Acquin,* 187 Conn. 647, 677, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983), quoting *State* v. *Derrico,* 181 Conn. 151, 162–63, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

defendant's conduct. *State* v. *Zayas,* 3 Conn. App. 289, 296–98, 489 A.2d 380 (1985). Our analytical path is illuminated by the United States Supreme Court's directive that "[t]he courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina* v. *Butler,* supra. " 'Although the issue is therefore ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence. . . .' " (Citation omitted.) *State* v. *Zayas,* supra, 297. "The standard for waiver is that announced in *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938): 'A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege . . . [which] must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' Accord, *North Carolina* v. *Butler,* [supra]; *State* v. *Wilson,* 183 Conn. 280, 439 A.2d 330 (1981)." *State* v. *Acquin,* 187 Conn. 647, 666–67, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983). With these principles in mind, we first examine the trial court's ruling, the statement ruled admissible and the circumstances surrounding the making of that statement.

In the course of its oral ruling, the court characterized the morning and afternoon interrogations of the defendant as "unconstitutional police conduct." The court, however, did not excise those portions of the final written statement which were the product of that conduct. Instead, the court found that this statement, viewed apart from prior events, was the product of a

knowing and voluntary waiver of the defendant's *Miranda* rights. We need not reach the question of whether these prior events rendered the subsequent written statement inadmissible. See *Oregon* v. *Elstad,* 470 U.S. 298, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985). We must, however, consider the events preceding the giving of the statement in question as "particular facts and circumstances"; *Johnson* v. *Zerbst,* supra; which are relevant to a determination of whether he knowingly and intelligently waived his *Miranda* rights.

The testimony is clear that Bogardis disclosed his findings to Nerkowski in the defendant's presence. Fabrizi testified that Nerkowski was "probably" present during Fabrizi's interrogation when inculpatory statements were made. The final statement taken by Nerkowski specifically includes admissions made by the defendant to the other two officers during prior interrogations. Thus, we do not find a sufficient basis upon which to view the defendant's conduct with Nerkowski in detached isolation from the day's prior events, as did the trial court. It is clear that the written statement of the defendant was no more than a continuation of the oral interrogation. "Despite the fact that [Nerkowski] gave warnings at the outset of [his] interview, from [the defendant's] point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed." *Miranda* v. *Arizona,* 384 U.S. 436, 496, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

As we turn to the facts and circumstances surrounding the defendant's written statement to Nerkowski, we do so with certain well established principles in mind. "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *North Carolina* v. *Butler,* supra,

373, quoting *Miranda* v. *Arizona,* supra, 475. "Waiver is not conclusively established by demonstrating that *Miranda* warnings were given and understood. . . . Nor is it conclusively rebutted by refusal to sign a form waiving *Miranda* rights . . . nor by refusal to sign a written statement in the absence of legal counsel." (Citations omitted.) *State* v. *Zayas,* supra, 297, quoting *State* v. *Harris,* 188 Conn. 574, 579–80, 452 A.2d 645 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).

Applying these principles, we note that the defendant was given *Miranda* warnings which he said he understood. Nerkowski then employed a form entitled "Notification Of Rights" which nowhere suggests the possibility of waiver of those rights. The defendant signed this notification form after reading it and the statement process began immediately without any further discussion of waiver of rights. Nerkowski interviewed the defendant for one half hour during which the defendant made the statements which were then reduced to writing. The actual writing of the statement consumed an additional forty minutes. At the very end of this process, the defendant read and signed the document after deleting a phrase. The court found that "the defendant knowingly and voluntarily waived his rights prior to the giving of that statement." We are unable to agree with that conclusion on the basis of this record.

When searching the record for evidence that the defendant waived his rights prior to giving the statement, we look in the first instance to that point in time after warnings are given but before the statement process begins. See *State* v. *Wilson,* supra (after acknowledging he understood his rights, defendant did not expressly waive his rights; nor did police request waiver or use department's waiver form). Here, the defendant acknowledged that he understood his rights. Nerkowski, however, never asked if he waived those

rights. Instead, Nerkowski relied exclusively upon the rights notification form which *he* understood to be a waiver. The record is devoid of any evidence that *the defendant* understood his signature on the notification form represented his "intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst,* supra, 469; *State* v. *Acquin,* supra, 666–67. Nor does this record disclose evidence of an "affirmative act" of waiver after warnings were read by Nerkowski. Cf. *State* v. *Harris,* supra, 580. The most that we can find is the silence of the defendant, which cannot be the sole basis of a finding of waiver. *State* v. *Wilson,* supra, 284.

Our analysis also includes factors which "traditionally cast doubt upon a finding of knowing and voluntary waiver: e.g., that the interrogation was lengthy or preceded by an incommunicado interrogation; *Miranda* v. *Arizona,* supra, 476; that the defendant lacked education; *Davis* v. *North Carolina,* 384 U.S. 737, 742, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966); that the defendant exhibited weakness of will or mind; *Fikes* v. *Alabama,* 352 U.S. 191, 196–97, 77 S. Ct. 281, 1 L. Ed. 2d 246, reh. denied, 352 U.S. 1019, 77 S. Ct. 553, 1 L. Ed. 2d 561 (1957); or that there were hostilities incident to the defendant's arrest or custodial interrogation. *McDonald* v. *Lucas,* 677 F. 2d 518, 519 (5th Cir. 1982)." *State* v. *Harris,* supra, 581–82.

We note in particular the defendant's difficulties communicating with counsel and the court and his foreign cultural background as suggestive of a lack of true understanding of the significance of his conduct while with Lieutenant Nerkowski. In addition, there is no indication that he was at all familiar with interrogation procedures. Cf. *State* v. *Frazier,* 185 Conn. 211, 226, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982).

The present case is clearly distinguishable from those cases where an otherwise valid waiver form was employed and either signed; id., 225; *State* v. *Derrico,* 181 Conn. 151, 169, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); or rejected; *State* v. *Harris,* supra, 578; by the accused. In those cases, evidence of the mere presence of such a document notifying the accused of the possibility of waiver provided a basis upon which to infer a *knowing* and *intelligent* waiver by subsequent conduct. Here, however, the absence of such evidence leaves a void which we are unable to fill. *State* v. *Wilson,* supra, 287.

Finally, we disagree with the trial court that the defendant's eventual correction and signing of the final written statement can suffice as substantial evidence of a valid waiver. Certainly, such evidence cannot be considered as proof of a waiver prior to making the statement. Based upon Nerkowski's testimony, the actual "statement" made by the defendant occurred during the half hour oral interview. The subsequent reduction of the statement to written form merely constituted a memorialization of this preceding conversation. Thus, there is simply no logical basis upon which to infer from either the defendant's ability to read this statement, his signature or his correction of it that he fully and validly waived his constitutional rights prior to making it. A valid waiver "will not be presumed . . . simply from the fact that a confession was in fact eventually obtained." *North Carolina* v. *Butler,* supra, quoting *Miranda* v. *Arizona,* supra, 475.

On the bases of all of the "particular facts and circumstances surrounding [the] case"; *Johnson* v. *Zerbst,* supra; we conclude that "[h]ere, as in *Tague* v. *Louisiana,* [444 U.S. 469, 471, 100 S. Ct. 652, 62 L. Ed. 2d 622 (1980)], 'no evidence at all was introduced to prove that [the defendant] knowingly and intelligently

waived his rights *before* making the inculpatory statement. The statement was therefore inadmissible.' " (Emphasis added.) *State* v. *Wilson,* supra.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.