## STATE OF CONNECTICUT v. MICHAEL PERSON
### (13336)

O'CONNELL, LAVERY and SCHALLER, Js.

Argued September 27—decision released December 27, 1994

*Donald D. Dakers,* special public defender, for the appellant (defendant).

*David J. Sheldon,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Turcotte,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals[1] from the judgment of conviction, following a jury trial, of murder in violation of General Statutes § 53a-54a[2] and criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (2).[3] The trial court granted the defendant's motion for a judgment of acquittal of risk of injury to a child in violation of General Statutes § 53-21. Thereafter, the state filed a substitute information charging the defendant with murder and criminal trespass in the first degree.

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in relevant part: "MURDER. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime. . . ."

[3] General Statutes § 53a-107 (a) provides in relevant part: "A person is guilty of criminal trespass in the first degree when . . . (2) he enters or remains in a building or any other premises in violation of a restraining order issued pursuant to section 46b-15 or a protective order issued pursuant to section 46b-38c by the superior court."

On appeal, the defendant claims that the trial court improperly refused to instruct the jury on the affirmative defense of extreme emotional disturbance. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant and Leshea Pouncy, the victim, had been romantically involved and had lived together for a brief time. Their relationship deteriorated, and the defendant moved out in January or February of 1991. On April 16, 1991, the victim obtained a protective order prohibiting the defendant from entering the premises where she lived. The defendant was aware of this restraining order.

After Pouncy broke up with the defendant, she and Donald Moody became close friends. On the evening of May 19, 1991, Moody was at Pouncy's apartment prior to their departure on a movie date. The defendant telephoned and spoke to Moody. He sounded upset and threatened to kill both Moody and Pouncy. Monique Pouncy, the victim's sister, accompanied Pouncy and Moody on the May 19 movie date. In explaining the delay in leaving for the theater, Pouncy told Monique of the defendant's threatening phone call.

In the afternoon of May 19, Earl Carthens, a friend of the defendant, had also received a telephone call in which the defendant had expressed his intention to harm Pouncy. The defendant was upset and told Carthens that he was "going to get even with [Pouncy]" and was "going to make her pay" for what she had done to him.

On the evening of May 19, the defendant went to Pouncy's house to recover personal belongings. He found the premises locked, and forced the exterior door open, and then forced his way through a locked interior door into her apartment. While he was gathering his things in the rear bedroom, he heard the apartment

door shut and heard Pouncy talking on the telephone to his mother. Although Pouncy mentioned his name, the defendant was not upset by what he overheard of the telephone conversation.[4]

Pouncy then walked into the bedroom, armed with a can of Mace in one hand and two knives in the other. The defendant detailed a scenario in which Pouncy sprayed Mace into his eyes as they struggled to gain possession of the knives. The struggle ended when Pouncy fell to the floor after the defendant stabbed her in the chest with one of the knives. The defendant panicked and ran off to Carthens' house. At about 1 a.m., the defendant surrendered at the New Haven police station where he gave both oral and written statements.

The victim died of a knife wound to the front of her chest, approximately five inches in depth, which pierced three-quarters of her aorta. The medical examiner stated that this wound probably was fatal within one minute of its infliction. Additional facts are included in our analysis.

In his brief, the defendant concedes that the evidence was sufficient to establish that he had the intent to kill Pouncy at the time he caused her death. He sought, however, to justify the killing as an act of self-defense. There was evidence that, if believed by the jury, would support this defense.

---

[4] The defendant testified about the overheard telephone call as follows:
"[Defense Counsel]: Did you hear any conversation that she had?
"A. Yes, I heard a little.
"Q. Who was—do you know who she was talking to?
"A. I assume she was talking to my mother. . . .
"Q. Why did you assume she was talking to your mother?
"A. I heard her mention my name a few times.
"Q. You can't get into the content of that telephone call.
"A. No.
"Q. But were you upset when you overheard this telephone call?
"A. No, not really. I was—
"The Court: The answer is, no, not really. Ask your next question."

The sole issue raised in the defendant's appeal is that the trial court improperly denied his request for a jury instruction on the affirmative defense of extreme emotional disturbance.[5] The state responds that the trial court properly denied the instruction for two reasons: (1) the defendant was not entitled to such instruction on a defense that directly contradicted his trial testimony, and (2) the defendant had not carried his burden of establishing sufficient evidence to warrant the requested instruction.

## I

The state argues that the defendant expressly denied that he was emotionally distressed. This contention is supported by the defendant's testimony on cross-examination in which he explicitly stated that he was not upset by any feeling that Moody was "moving in" on his girlfriend. Furthermore, he specifically testified that he was not bothered by Moody's relationship with the victim.[6] Despite his express denial of any emotional reaction to Moody's relationship with his former girlfriend and his testimony that he had acted in self-defense, the defendant maintains that he was neverthe-

---

[5] " '[A]n extreme emotional disturbance is one where self-control and reason are overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions.' *State* v. *Elliott*, 177 Conn. 1, 9, 411 A.2d 3 (1979)." *State* v. *Bryan*, 34 Conn. App. 317, 322, 641 A.2d 443 (1994).

[6] The following is an excerpt from the defendant's testimony:

"[The State]: When you entered that apartment that was indeed your intent to kill Donald Moody and Leshea Pouncy, wasn't it?

"A. No, sir.

"Q. Because you were upset, because you felt that Donald was moving in on your gal.

"A. Not really.

"Q. Not really?

"A. No.

"Q. That didn't bother you?

"A. No."

less entitled to an extreme emotional disturbance jury instruction. He bases his contention on the argument that the jury could have disbelieved his testimony.

This is not a case of first impression. State and federal courts have both considered whether a defendant is entitled to a jury instruction that contradicts his own evidence. The cases hold that "[w]hen the jury instruction has the effect of contradicting the defendant's own evidence, he is not entitled to it. *United States* v. *Crowder*, 543 F.2d 312, 317 (D.C. Cir. 1976), cert. denied, 429 U.S. 1062, 97 S. Ct. 788, 50 L. Ed. 2d 779 (1977); *State* v. *Cassino*, [188 Conn. 237, 244, 449 A.2d 154 (1982)]." *State* v. *Zayas*, 3 Conn. App. 289, 295, 489 A.2d 380, cert. denied, 195 Conn. 803, 491 A.2d 1104 (1985).

The defendant testified that he was not upset; this testimony was in direct contradiction to his request to charge. "[T]o allow the charge would have led to an absurd result, namely, if the jury found for the defendant on his [extreme emotional disturbance] claim, they would have to conclude he was lying in his trial testimony." *State* v. *Folson*, 10 Conn. App. 643, 649 n.5, 525 A.2d 126 (1987) (discussing *Zayas*).

The doctrine of *Zayas* and *Cassino* does not contradict the rule that a defendant may maintain inconsistent defenses. See *State* v. *Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983). " '[T]he fact that one defense is on the theory that [the] accused did not commit the offense, as where he relies on alibi, does not deprive him of the right to avail himself of other defenses . . . .' " Id.[7] Where, however, as in the present case, the defendant specifically disavows having the requisite mental state for the instruction that he seeks,

---

[7] For example, charged with robbery in the first degree, a defendant could put forward an alibi defense and also contend that the weapon allegedly used in the crime was nonfunctional. See General Statutes § 53a-134.

*Cassino* and *Zayas* preclude the defendant from obtaining the contradicting instruction.

The trial court properly declined to give the requested extreme emotional disturbance instruction because it directly contradicted the defendant's trial testimony.

## II

The state also argues that there was insufficient evidence to support the extreme emotional disturbance instruction. Our analysis in part I of this opinion concerning the contradictory nature of an extreme emotional disturbance instruction in the present case is dispositive of this appeal. Accordingly, we do not reach the sufficiency of evidence claim.

The judgment is affirmed.

In this opinion the other judges concurred.