## STATE OF CONNECTICUT *v.* MICHAEL PERSON
### (15228)

Peters, C. J., and Callahan, Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued October 24, 1995—decision released March 19, 1996

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Michele C. Lukban,* assistant state's attorney, with whom were *James R. Turcotte,* assistant state's attorney, and, on the brief, *Michael Dearington,* state's attorney, and *David J. Sheldon,* deputy assistant state's attorney, for the appellee (state).

BERDON, J. The principal issue raised in this appeal is whether the Appellate Court properly concluded that the defendant was not entitled to a jury instruction on the affirmative defense of extreme emotional disturbance because the defendant's trial testimony had contradicted such a defense.

After a jury trial, the defendant, Michael Person, was convicted of the murder of Leshea Pouncey in violation of General Statutes § 53a-54a (a),[1] and of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (2).[2] The trial court sentenced the defendant to an effective term of imprisonment of forty-eight years. On appeal to the Appellate Court, the defendant argued that the trial court had improperly refused to charge the jury on the affirmative defense of extreme emotional disturbance. *State* v. *Person,* 36 Conn. App. 448, 454, 651 A.2d 754 (1994). The Appellate Court affirmed the judgment of the trial court. Id. We granted

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] The defendant was also charged with risk of injury to a child in violation of General Statutes § 53-21, for which charge the trial court granted the defendant's motion for a judgment of acquittal.

the defendant's petition for certification to appeal[3] and now reverse the judgment of the Appellate Court.

During the trial, defense counsel filed a written request to charge the jury on the defense of extreme emotional disturbance. At the close of the case, the court denied the defendant's request for two reasons: (1) the defendant on cross-examination had testified that he had not been upset by the events on which he partially relied for the defense; and (2) the defendant had produced insufficient evidence to raise the issue of extreme emotional disturbance. During a colloquy with counsel, out of the presence of the jury, the court stated: "I cannot see extreme emotional disturbance in this case. I don't see any evidence of it. You are asking in effect for the jury to find the opposite of what the defendant says occurred to support a claim by the defendant that he has offered evidence to support extreme emotional disturbance . . . ." The court further stated: "I assumed from the outset that extreme emotional disturbance would be in this case but I didn't expect to hear the defendant on the stand denying every question that was asked about him leading to his mental state at various times." The trial court did instruct the jury on self-defense and on the lesser included offenses of manslaughter in the first degree,[4] manslaughter in the second degree and criminally negligent homicide.

The Appellate Court did not reach the issue of whether there was sufficient evidence to warrant an instruction on extreme emotional disturbance because

---

[3] We certified the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the defendant was not entitled to an instruction on the defense of extreme emotional disturbance?" *State* v. *Person,* 232 Conn. 919, 919–20, 656 A.2d 670 (1995).

[4] The trial court instructed the jury on manslaughter in the first degree pursuant to General Statutes § 53a-55 (a) (1) and (3) and manslaughter in the second degree pursuant to General Statutes § 53a-56, but refused to instruct on manslaughter in the first degree predicated on extreme emotional disturbance pursuant to § 53a-55 (a) (2).

it held that if, "as in the present case, the defendant specifically disavows having the requisite mental state for the instruction that he seeks, *Cassino*[5] and *Zayas*[6] preclude the defendant from obtaining the contradicting instruction." *State* v. *Person*, supra, 36 Conn. App. 453–54. We disagree.

Section 53a-54a (a), in defining the crime of murder, excepts, as an affirmative defense, a homicide committed by a defendant who acts "under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ." Under such circumstances, if a defendant intentionally causes the death of an individual, but does so under extreme emotional disturbance, the trier of fact may convict the defendant of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2).[7] *State* v. *Asherman*, 193 Conn. 695, 731, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985).

The trial court's denial of the defendant's request for an instruction on extreme emotional disturbance raises two issues: (1) whether the defendant's trial testimony

---

[5] *State* v. *Cassino*, 188 Conn. 237, 449 A.2d 154 (1982).

[6] *State* v. *Zayas*, 3 Conn. App. 289, 489 A.2d 380, cert. denied, 195 Conn. 803, 491 A.2d 1104 (1985).

[7] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when . . . (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

precluded such an instruction because it directly contradicted the defense;[8] and, if not, (2) whether there was sufficient evidence to warrant the requested instruction. We review each of these issues in turn together with their related facts.

## I

The following testimony was presented to the jury. The defendant and Pouncey had been romantically involved and had planned to marry. Pouncey, however, terminated their engagement, after which she commenced a relationship with Donald Moody. The defendant testified that on May 19, 1991, he had forcefully entered Pouncey's apartment while she was away in order to recover his personal belongings. While the defendant was in the rear bedroom gathering his possessions, Pouncey returned home with her child. The defendant further testified that after speaking on the telephone, Pouncey had confronted him in the bedroom with a can of Mace in one hand and two knives in the other. According to the defendant, Pouncey had instigated a struggle by spraying Mace in his eyes. In the course of the struggle, the defendant stabbed Pouncey. The defendant then fled the apartment and later surrendered himself at the New Haven police station.

On direct examination, the defendant testified, with respect to his state of mind, that he had been "somewhat" upset by the fact that Pouncey had begun dating Moody.[9] On cross-examination, however, when asked

---

[8] At oral argument the state modified its position by conceding that while there is no per se rule that would deny the defendant his requested charge, the defendant had failed to meet his initial burden of producing sufficient evidence to substantiate the charge.

[9] On direct examination, the defendant testified accordingly:

"Q. So that at the end of April you became aware that she was seeing a fellow named Donald Moody.

"A. Yes.

if he was "upset because [he] felt that [Moody] was moving in on [his] gal," the defendant responded: "Not really."[10] Consequently, the court refused to instruct the jury on the defense of extreme emotional disturbance.

" 'A fundamental element of due process is the right of a defendant charged with a crime to establish a defense.' " *State* v. *Belle*, 215 Conn. 257, 273, 576 A.2d 139 (1990), quoting *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The question before us today is whether a defendant forgoes the right to have a jury instructed on a requested defense if the defendant denies having the state of mind required to establish the requested defense.

It is for the jury to evaluate the credibility of the witnesses and the weight to be accorded the evidence. See *State* v. *Breton*, 235 Conn. 206, 234, 663 A.2d 1026 (1995). "The jury is free to juxtapose conflicting versions of events and to determine which is more credible." *State* v. *Adams*, 225 Conn. 270, 278, 623 A.2d 42 (1993). "[T]he [jury] can disbelieve any or all of the evidence . . . and can construe [the] evidence in a manner different from the parties' assertions. . . ." (Citations omitted.) *State* v. *Steiger*, 218 Conn. 349, 381, 590 A.2d 408 (1991). Therefore, because the jury was free to disbelieve the defendant's testimony, his asser-

---

"Q. Did that upset you or concern you?

"A. Somewhat. She said it was a friendship basis."

[10] The cross-examination of the defendant included the following testimony:

"Q. When you entered that apartment that was indeed your intent to kill Donald Moody and Leshea Pouncey, wasn't it?

"A. No, sir.

"Q. Because you were upset because you felt that Donald was moving in on your gal.

"A. Not really.

"Q. Not really?

"A. No.

"Q. That didn't bother you?

"A. No."

tions therein did not preclude a jury instruction on extreme emotional disturbance. Rather, as the state correctly conceded at oral argument,[11] a jury may be instructed on a requested defense theory, even if the defendant has testified to facts that contradict the requested charge, if there is sufficient evidence to warrant the instruction. See *State v. Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983).

The Appellate Court's reliance on *State v. Cassino*, 188 Conn. 237, 449 A.2d 154 (1982), and *State v. Zayas*, 3 Conn. App. 289, 489 A.2d 380, cert. denied, 195 Conn. 803, 491 A.2d 1104 (1985), was misplaced. Neither of those cases stands for the proposition that a defendant forfeits a defense theory if he or she testifies to a contradictory fact or conclusion. Our decision in *Cassino* "was based upon the conclusion that the defendant had failed to introduce sufficient evidence to warrant a self-defense instruction." *State v. Harris*, supra, 189 Conn. 274 n.4. Similarly, in *Zayas*, the defendant requested that the jury be charged on self-defense, but there was insufficient evidence tending to establish that defense. *State v. Zayas*, supra, 294.

Instructing on a defense for which the defendant has given contradictory testimony is particularly appropriate in cases, such as the present one, in which the requested defense involves the defendant's mental state. The applicability of such a defense theory should not be judged solely upon the defendant's personal description of his or her own mental status. In fact, we have previously held that "a court may, under certain circumstances, impose a mental status defense [such as extreme emotional disturbance] on an unwilling defendant." *State v. Manfredi*, 213 Conn. 500, 516, 569 A.2d 506, cert. denied, 498 U.S. 818, 111 S. Ct. 62, 112 L. Ed. 2d 37 (1990); see *State v. Asherman*, supra, 193

---

[11] See footnote 8.

Conn. 729 (jury instructed on extreme emotional distur-
bance defense over objection of defendant).

This analysis is consistent with the rule that a defend-
ant is permitted to present inconsistent defenses to a
jury. *State* v. *Harris*, supra, 189 Conn. 273. In *Harris*,
the defendant asserted two inconsistent defenses: (1)
an alibi defense; and (2) an affirmative defense that the
gun used in the alleged crimes was a toy. Id., 271–72.
The state argued that "contrived defenses would result
[i]f a defendant could deny participation in a robbery,
offer evidence of someone else's involvement using a
toy gun, and still avail himself of the affirmative defense
under [General Statutes] § 53a-134 (a) (4)."[12] (Internal
quotation marks omitted.) Id., 272. We rejected the
state's argument and held that "inconsistent defenses
may be interposed in a criminal case. . . . [The fact
t]hat a defense is interposed which is inconsistent with
the defendant's alibi theory does not preclude an
instruction as to that defense. . . . [T]he fact that one
defense is on the theory that [the] accused did not
commit the offense, as where he relies on alibi, does
not deprive him of the right to avail himself of other
defenses. . . . To compel a defendant to admit guilt
in order to invoke a defense effectively relieves the
prosecution of proving his guilt beyond a reasonable
doubt and frustrates the assertion of the defense itself

[12] General Statutes § 53a-134 (a) provides in relevant part: "A person is
guilty of robbery in the first degree when, in the course of the commission
of the crime of robbery as defined in section 53a-133 or of immediate flight
therefrom, he or another participant in the crime: (1) Causes serious physical
injury to any person who is not a participant in the crime; or (2) is armed
with a deadly weapon; or (3) uses or threatens the use of a dangerous
instrument; or (4) displays or threatens the use of what he represents by
his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun
or other firearm, except that in any prosecution under this subdivision, it
is an affirmative defense that such pistol, revolver, rifle, shotgun, machine
gun or other firearm was not a weapon from which a shot could be dis-
charged."

and undermines its policy." (Citations omitted; internal quotation marks omitted.) Id., 273.

In *Mathews* v. *United States*, 485 U.S. 58, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988), the United States Supreme Court addressed an issue similar to the one raised in this case. In *Mathews*, the defendant requested a jury instruction on the affirmative defense of entrapment, despite the fact that he had denied commission of the crime. The court held "that even if the defendant denies one or more elements of the crime [or defense], he is entitled to an [instruction on his requested affirmative defense] whenever there is sufficient evidence from which a reasonable jury could find [the defense]." Id., 62. Noting that a defendant may put forward inconsistent defenses, the court stated that "[w]e do not think that allowing inconsistency necessarily sanctions perjury. . . . Inconsistent testimony by the defendant seriously impairs and potentially destroys his [or her] credibility. While we hold that a defendant may both deny [certain] acts . . . and at the same time claim [a defense inconsistent with his or her testimony], the high risks to him [or her] make it unlikely as a strategic matter that he [or she] will choose to do so." (Citation omitted; internal quotation marks omitted.) Id., 65–66.

Similarly, we hold that no rule of law prevents a jury from being charged, when requested, on the defense of extreme emotional disturbance simply because the defendant has testified that he or she was not upset.[13] It is for the trier of fact to determine the weight to be accorded evidence. See *State* v. *Breton*, supra, 235 Conn. 234. Therefore, the question of whether a requested charge on extreme emotional disturbance was warranted in this case must be answered by

---

[13] We note that credibility is fragile. Although inconsistent defenses and contradictory testimony may be proffered by a defendant, common sense instructs us that a consistent defense theory and consistent testimony are most credible.

determining whether there was sufficient evidence to merit an instruction on the defense.

## II

The affirmative defense of extreme emotional disturbance, unknown to the common law, is authorized by § 53a-54a. Proof of this defense by a preponderance of the evidence;[14] General Statutes § 53a-12; entitles the defendant to a conviction of manslaughter in the first degree, instead of a conviction of murder. General Statutes § 53a-55. "Section 53a-54a describes the two elements of [the affirmative defense of extreme emotional disturbance]: (1) the defendant committed the offense under the influence of extreme emotional disturbance; and (2) there was a reasonable explanation or excuse for the defendant's extreme emotional disturbance." *State* v. *Forrest*, 216 Conn. 139, 148, 578 A.2d 1066 (1990). In an effort to "[interpret] the meaning of the phrase extreme emotional disturbance . . . [this court has] enumerated understandable guidelines for instructing a jury in determining the presence or absence of that mental condition";[15] (internal quotation marks omitted) id.; but they are neither conclusive nor exclusive. "[A]n extreme emotional disturbance is one where self-control and reason are overborne by intense feelings such as passion, anger, distress, grief, excessive

[14] Expert testimony is not required to establish the defense of extreme emotional disturbance. *State* v. *Fair*, 197 Conn. 106, 111, 496 A.2d 461 (1985), cert. denied, 475 U.S. 1096, 106 S. Ct. 1494, 89 L. Ed. 2d 895 (1986). The defendant's own testimony or the testimony of a lay witness may be offered to prove that the defendant was acting under extreme emotional disturbance.

[15] We have interpreted "extreme emotional disturbance" to mean that "(a) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the Penal Code; (b) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (c) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feelings . . . ." *State* v. *Elliott*, 177 Conn. 1, 9, 411 A.2d 3 (1979); see *State* v. *Forrest*, 216 Conn. 139, 148, 578 A.2d 1066 (1990).

agitation or other similar emotions." *State* v. *Elliott*, 177 Conn. 1, 9, 411 A.2d 3 (1979). "[A] homicide influenced by an extreme emotional disturbance [however] is not one which is necessarily committed in the 'hot blood' state but rather can be one brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then react violently, seemingly without provocation." *State* v. *Asherman*, supra, 193 Conn. 733–34. "In the final analysis, the ultimate determination of the presence or absence of extreme emotional disturbance is one of fact for the trier . . . ." (Internal quotation marks omitted.) *State* v. *Raguseo*, 225 Conn. 114, 122, 622 A.2d 519 (1993).

If there is sufficient evidence of a legal defense, the defendant is entitled, as a matter of law, to a requested jury charge on that defense. *State* v. *Lewis*, 220 Conn. 602, 618–19, 600 A.2d 1330 (1991); *State* v. *Havican*, 213 Conn. 593, 597, 569 A.2d 1089 (1990); *State* v. *Fuller*, 199 Conn. 273, 278, 506 A.2d 556 (1986); *State* v. *Rosado*, 178 Conn. 704, 707–708, 425 A.2d 108 (1979). It is well established in Connecticut that a defendant is entitled to have the jury instructed on any general defense "for which there is any foundation in the evidence, no matter how weak or incredible." (Internal quotation marks omitted.) *State* v. *Havican*, supra, 597; *State* v. *Fuller*, supra, 278. This standard is appropriate when a defendant raises a general defense and the state has the burden of disproving that defense beyond a reasonable doubt. General Statutes § 53a-12 (a).[16]

The "any evidence" standard has been improperly applied, however, to affirmative defenses. See *State* v. *Belle*, 215 Conn. 257, 275, 576 A.2d 139 (1990) (license as affirmative defense to criminal trespass); see also

---

[16] General Statutes § 53a-12 (a) provides: "When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt."

*State* v. *Bryan*, 34 Conn. App. 317, 324, 641 A.2d 443 (1994) (affirmative defense of extreme emotional disturbance).[17] In those cases, the fact that it is the defendant who shoulders the burden of proving an affirmative defense by a preponderance of the evidence was not taken into consideration. To the extent that those cases have held that "any evidence" is sufficient for a defendant to be entitled to a requested instruction regarding an affirmative defense, they are overruled. Because the defendant bears the burden of proof of an affirmative defense; General Statutes § 53a-12 (b);[18] we now hold that a defendant is entitled to a requested instruction on the affirmative defense of extreme emotional disturbance only if there is sufficient evidence for a rational juror to find that all the elements of the defense are established by a preponderance of the evidence.[19]

In the present case, despite the defendant's testimony regarding his state of mind, there was sufficient evi-

---

[17] In *Bryan,* citing *State* v. *Havican,* supra, 213 Conn. 597, the Appellate Court improperly stated that the defendant was entitled to an instruction of extreme emotional disturbance "for which there is any foundation in the evidence, no matter how weak or incredible." (Internal quotation marks omitted.) *State* v. *Bryan,* supra, 34 Conn. App. 324. In *Havican,* however, the "any evidence" standard was properly applied because the defense in question was self-defense, which is not an affirmative defense. As the *Havican* court stated: "When the legislature has created a legally recognized defense, the defendant is entitled to a proper jury instruction on the elements of the defense so that the jury may ascertain whether the state has sustained its burden of disproving the defense beyond a reasonable doubt." *State* v. *Havican,* supra, 598. Nevertheless, we do not want to imply that in *Bryan* the evidence was insufficient to require the trial court to instruct on the affirmative defense of extreme emotional disturbance.

[18] General Statutes § 53a-12 (b) provides: "When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

[19] Unlike a general defense, such as self-defense, an affirmative defense must be proven by the party seeking the defense by a preponderance of the evidence. To apply the lower standard of "any evidence" would create the possibility of instructing a jury on an affirmative defense that a juror could not reasonably conclude had been established by a preponderance of the evidence.

dence to require the trial court to instruct the jury on the requested defense of extreme emotional disturbance. "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. This is especially true where a person has caused the death of another person." (Internal quotation marks omitted.) *State* v. *Ray*, 228 Conn. 147, 155, 635 A.2d 777 (1993). The evidence required to establish a defense based on extreme emotional disturbance often is circumstantial. See *State* v. *Asherman*, supra, 193 Conn. 732; *State* v. *Rodriguez*, 180 Conn. 382, 404, 429 A.2d 919 (1980) ("[b]ecause it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proved by circumstantial evidence").

The following evidence pertaining to the defendant's emotional disturbance was introduced at trial. In 1990, the defendant and Pouncey had an intimate relationship and planned to marry. During that year, the defendant and Pouncey shared an apartment in New Haven until the defendant relocated to Atlanta, Georgia, in June. In September, 1990, the defendant returned to Connecticut and resumed his cohabitation with Pouncey until February, 1991. In April, 1991, the defendant gave Pouncey an engagement ring, which she initially accepted, but soon thereafter returned. The defendant continued to contact Pouncey in the hope that their relationship could be salvaged. After her engagement to the defendant had terminated, Pouncey commenced a relationship with Moody. On April 16, 1991, Pouncey alleged that she was being harassed by the defendant and obtained a restraining order against the defendant. Despite the restraining order, the defendant continued to contact Pouncey.

During the afternoon of May 19, 1991, the day of the murder, the defendant called a friend, Earl Carthens,

threatening that he "was going to get even with [Pouncey]" and "make her pay for what she did to [him]." Later that day, the defendant met with Pouncey in the hall outside her apartment and spoke with her for approximately twenty minutes. Upon leaving, the defendant spotted Moody approaching Pouncey's apartment building and rushed to a pay phone to inform Pouncey that "her friend was on his way." Shortly thereafter, the defendant called again. This time Pouncey handed the receiver to Moody. In his conversation with Moody, the defendant sounded upset and threatened to kill both Moody and Pouncey.[20] After the defendant's telephone call, Pouncey called the police to report the defendant's harassment and thereafter went out for the evening.

While Pouncey was away from her apartment, the defendant forcibly entered the apartment in order to retrieve his personal belongings. Pouncey returned home with her child while the defendant was in the rear bedroom gathering his possessions. A struggle ensued and, as a result, Pouncey was fatally stabbed. Arkady Katsnelson, an associate medical examiner, testified that in addition to being stabbed in her chest,

---

[20] Moody testified as follows to the substance of that conversation: "At that time when I answered the phone I said to Michael, I said, Michael, this is Donald. I said, what is going on. The next thing I know he is, I am going to kill both of you, like that. And at that time I said to him, I said, wait a minute, hold up, hold up, you know, and he is going on and on like, well, I didn't come back from Atlanta to go out like this. *He was all upset. He said he was going to kill us and all kinds of crazy other things.* I said, Michael, calm down, calm down, this is me, I have known you for a long time. I said—I was trying to talk to him like a man and *he was telling me* I was—*he was going to step into his past and whatever and he said him and Leshea should be getting back together and I was stopping all that,* and I said to him, you know, she didn't tell me none of this, you know, but, you know, I am trying to talk to you as a man and you know, I don't, you know, you threatened us, and he said, I'm sorry and let me speak to Leshea. At that time I said, she won't speak to you. If she wants to, that is up to her." (Emphasis added.)

back and buttocks, Pouncey had several defensive wounds on her hands.[21] The defendant then fled the apartment and went to Carthens' home. Carthens testified that the defendant had looked "tired," "drained" and "exhausted." Accompanied by Carthens and the pastor of his church, the defendant went to the New Haven police station to surrender himself. Carthens further testified that the defendant had not spoken on the way to the station and had looked as if "he was out of it." Lieutenant David G. Burleigh, the police officer who had taken the defendant's oral and written statements, testified that the defendant "was very emotional. He was crying and repeating over and over, 'just lock me up, just lock me up.' "

From this evidence, the jury could have reasonably concluded that "the defendant committed [Pouncey's murder] under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse . . . ." General Statutes § 53a-54a (a). Therefore, we conclude that there was sufficient evidence to warrant an instruction, and that the trial court was required to charge the jury on the defense of extreme emotional disturbance as the defendant had requested.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new trial.

In this opinion PETERS, C. J., and BORDEN, KATZ and PALMER, Js., concurred.

BORDEN, J., with whom PALMER, J., joins, concurring. I agree with and join the majority opinion because

---

[21] Katsnelson, as a result of an autopsy performed on Pouncey's body, testified that she was stabbed in three locations: her chest; the top of her back; and her buttocks. Katsnelson could not determine the order in which the stab wounds had been inflicted, but he did testify that the one to Pouncey's chest pierced her aorta, and was fatal within one minute of infliction.

it accurately states our current law and appropriately applies that law to the facts of this case. I write separately, however, to point out an anomaly that is embodied in our law, which is consistent with the criminal law generally, regarding the ability of a defendant to present inconsistent defenses.

I agree that our law has traditionally permitted the presentation of inconsistent defenses in a criminal case. See, e.g., *State* v. *Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983). This is consistent with the general rule throughout the states; see 22 C.J.S., Criminal Law § 54 (1989); and the federal system. See *Mathews* v. *United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988). Thus, we have decided that, if the defendant seeks to have inconsistent theories of defense that the evidence supports presented to the jury, he is entitled thereto. See *State* v. *Harris*, supra, 273.[1]

Although in *Harris* we implicitly decided the issue in this case, we have never explicitly discussed that issue, namely, whether the defendant is entitled to a jury instruction on a theory of defense that his own testimony squarely contradicts,[2] where there is other

---

[1] In *State* v. *Harris*, supra, 189 Conn. 268–69, the defendant was charged with robbery in the first degree. He sought a lesser included offense instruction on the basis of his testimony. He testified that he had been merely a witness to, rather than a participant in, the armed robberies at issue, and that the weapon used by the actual robber was merely a toy. Id., 270–71. Thus, in order for the jury to consider his claimed inconsistent theories of defense—namely, an alibi defense, in that he was only a witness to the crimes, and an affirmative defense, in that the weapon was not one from which a shot could be discharged—and thereby convict him of the lesser included offense of robbery in the second degree, the jury would have been required to reject his testimony that he was only a witness to the crimes.

[2] The record is clear that the defendant's testimony was squarely inconsistent with the affirmative defense of extreme emotional disturbance. The record indicates that the defendant consistently testified not only that he had no intent to kill the victim, but that he never even intended to stab her. The defendant testified that the penetration of the victim's body by two knives was wholly accidental, occurring in the course of what he described as a defensive struggle with her. In brief, he testified repeatedly that when

evidence in the case that does, nonetheless, support that theory of defense. Put another way, is a defendant entitled to a jury instruction on a theory of defense that would require the jury wholly to reject his testimony in order to acquit him on the theory of defense that he seeks to have presented to the jury?

Answering this question in the affirmative injects an element of anomaly into our criminal law. It would require the court, for example, to give a jury instruction on both alibi and self-defense as theories of defense, in an assault case in which the defendant had testified that he was in Chicago at the time of the crime, and yet witnesses testifying that he was involved in the physical altercation indicated that he was defending himself. Thus, in order for the jury to acquit the defendant on the self-defense theory, it would have to disbelieve his own testimony that he was in Chicago. One cannot deny that there is something irrational about such an application of the principle permitting the presentation of inconsistent defenses.

Nonetheless, I agree that this is the way in which this case should be decided. I am unable to find any court that has departed from the traditional rule, simply because the defendant's testimony is inconsistent with one of his theories of defense.[3] The law appears to be

the victim entered the room where he was retrieving his things, she had Mace in one hand and two knives, a large one and a small one, in the other hand. She immediately sprayed his face with Mace, rendering him almost sightless. He then struggled with her, trying to keep her from stabbing him with the knives. When she dropped the large knife, he grabbed her arms and twisted the remaining knife-wielding arm behind her back, and in the course of that struggle the knife unintentionally entered her back. According to his testimony, she then reached down and picked up the large knife, and a similar struggle ensued, in the course of which, again, that knife unintentionally entered her chest.

[3] Some jurisdictions recognize at least two exceptions to the general rule allowing inconsistent defenses. Specifically, in homicide cases, some jurisdictions will not allow instruction on both accident and self-defense. See, e.g., *Bradford* v. *State*, 512 So. 2d 134, 137 (Ala. Crim. App. 1987); *People*

nearly universal in this respect. I do not see a sufficient reason for our law to be out of step with this generally accepted rule.

Significantly, as the majority aptly notes, the United States Supreme Court, as a matter of federal criminal law, has recently and specifically held that the traditional rule applies, even when the defendant's own testimony contradicts one of his theories of defense. See *Mathews* v. *United States*, supra, 485 U.S. 62 (defendant who testified that he had not committed crime entitled to jury instruction on inconsistent theory of entrapment into commission of crime). Moreover, the majority of the United States Supreme Court took this position notwithstanding a dissent specifically arguing that it invites perjury, turns a criminal trial into sport rather than a search for truth, and results in increased jury confusion. Id., 70–73. (White, J., dissenting). Thus, although this decision was based on federal criminal law, and not the constitution and, therefore, we are not bound by it in deciding what our law should be, it is nonetheless persuasive. Finally, I am persuaded also by the concurring comment in *Mathews* that, when a defendant takes truly inconsistent positions, it will be "self-penalizing"; id., 68 (Scalia, J., concurring); because it will invite prosecutorial argument pointing out the inconsistency, and will encourage jury skepticism about his entire defense.

NORCOTT, J., concurring. I agree with part II of the majority opinion and concur in the result reached in part I of the majority opinion. With regard to the first

---

v. *Shelton*, 140 Ill. App. 3d 886, 890, 489 N.E.2d 879 (1986); see also annot., 15 A.L.R.4th 983 (1982). Other jurisdictions have rejected the United States Supreme Court's reasoning in *Mathews* and continue to refuse a jury instruction on the entrapment defense when the defendant denies commission of the crime. See, e.g., *State* v. *Soule*, 168 Ariz. 134, 137, 811 P.2d 1071 (1991); *People* v. *Gillespie*, 136 Ill. 2d 496, 501–503, 557 N.E.2d 894 (1990).

issue, I am in agreement with the dissent of Justice Callahan that, to the extent that *State* v. *Harris*, 189 Conn. 268, 455 A.2d 342 (1983), must be read to require the trial court to give an instruction on an alternative inconsistent defense regardless of what the defendant has stated in relation to that defense in his testimony, essentially on the ground that the jury could find the defense established if it disbelieves the defendant's own testimony relevant to that defense, *Harris* goes too far. I find it hard to accept that the right to present a defense includes the right to present to the jury a defense that the defendant's own testimony directly and conclusively contradicts. I am convinced, however, that this is not such a case, both because the assessment of one's emotional state involves a combination of complex factors and judgments and, therefore, testimony regarding one's prior emotional state should be assessed more flexibly, and because, as the majority states, the defendant's testimony as to his emotional state when the attack on the victim occurred was somewhat equivocal. Further, I believe that in the present case, the evidence adduced in support of the affirmative defense sought, although hardly overwhelming, was sufficient, despite the defendant's testimony, to support a finding by a jury that the defense was established by a preponderance of the evidence.

CALLAHAN, J., dissenting. I cannot believe that the legislature in enacting General Statutes § 53a-54a, establishing extreme emotional disturbance as an affirmative defense, intended that a defendant would be entitled to a jury instruction on that defense when he explicitly disavowed the necessary state of mind. If, as the majority believes, there is case law that mandates a jury instruction under such circumstances, we should take the opportunity provided by this case to change it. Otherwise, the legislative mandate placing the burden of proof of extreme emotional disturbance upon the defendant is nullified. Certainly a defendant who testi-

fies, as did this defendant, that he was only "somewhat" upset, "[n]ot really" upset and not bothered by the termination of his relationship with the victim has not begun to prove extreme emotional disturbance by a preponderance of the evidence. The "term 'extreme' refers to the greatest degree of intensity away from the norm for that individual." *State* v. *Elliott*, 177 Conn. 1, 10, 411 A.2d 3 (1979). Moreover, I cannot see how other evidence could override the defendant's expression of his own subjective state of mind, which is the only issue germane to a defense of extreme emotional disturbance. This is not an insanity defense where a deranged defendant may himself deny being insane but produce expert testimony that would require the inclusion of an insanity instruction in the trial court's charge. See General Statutes § 53a-13. If an express disavowal of extreme emotional disturbance does not foreclose an instruction on extreme emotional disturbance, then such an instruction should be given at the end of virtually every murder trial because such crimes rarely take place in an emotional vacuum. I do not think, however, that universal application of the defense was intended by the legislature. In sum, I would conclude that when a defendant disavows the state of mind necessary to constitute extreme emotional disturbance, he is not entitled to an instruction as to that mitigant.

Moreover, although there was evidence adduced at trial of circumstances that possibly could have caused a theoretical defendant to be extremely emotionally disturbed and even evidence that this defendant was upset at various times, there was no testimony that at the time that he killed the victim the defendant was extremely emotionally disturbed. The only testimony elicited as to that time frame was, in fact, to the contrary. I believe that the majority confuses evidence of conditions that could have caused the defendant to be extremely emotionally disturbed with evidence that he

was, in fact, extremely emotionally disturbed when he killed the victim.[1] The only testimony as to the defendant's state of mind when he killed the victim was supplied by the defendant. His testimony was that at that time he was not extremely emotionally disturbed, that he was acting in self-defense and that while so acting he inadvertently killed the victim without any intention to do so.[2] Testimony concerning the defendant's emotional involvement with the victim and his perception that she was "doing him wrong" does not equate with extreme emotional disturbance when the defendant himself disclaims such a reaction. I would conclude that because the evidence at trial would not have permitted a jury reasonably to find that the defendant had proven extreme emotional disturbance by a preponderance of the evidence, a jury instruction on that defense was not warranted.

I would affirm the judgment of the Appellate Court.

---

[1] By so doing, the majority essentially establishes a per se rule that anyone who kills a former girlfriend or boyfriend is entitled to a jury instruction on extreme emotional disturbance.

[2] The intent to cause death is itself a prerequisite to the defense of extreme emotional disturbance. See General Statutes § 53a-54a.