******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ALEXANDER, J., with whom MULLINS, C. J., joins, concurring in part and dissenting in part. I respectfully disagree with part I of the majority opinion, which holds that multiple misstatements of the law concerning the affirmative defense of extreme emotional disturbance under General Statutes § 53a-54a (a) by the prosecutors during closing and rebuttal arguments deprived the defendant, Robert Parris, of a fair trial.[1] My application of the factors set forth in *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987), leads me to conclude that these apparent misstatements of the law, however inartful, did not violate the defendant's right to a fair trial. Any prejudice resulting from these misstatements was not severe because they were accompanied by several correct statements of the law and were mitigated by directions from both the trial court and the prosecutors to follow the court's legal instructions with respect to the extreme emotional disturbance defense. Because I would affirm the judgment of conviction, I respectfully dissent in part.

I agree with the facts and procedural history as set forth in the majority opinion and that the general principles governing our review of prosecutorial impropriety claims are well established. See, e.g., *State* v. *Sullivan*, 351 Conn. 798, 809–11, 334 A.3d 446 (2025). It is axiomatic that, during closing arguments, a prosecutor may not "misstate the law or . . . distort the government's burden of proof . . . because such statements are likely to improperly mislead the jury." (Internal quotation marks omitted.) *State* v. *Courtney G.*, 339 Conn. 328, 357, 260 A.3d 1152 (2021); see, e.g., *State* v. *Otto*, 305 Conn. 51, 77, 43 A.3d 629 (2012); *State* v. *Rizzo*, 266 Conn. 171, 262 n.49, 833 A.2d 363 (2003). A two step

---

[1] I agree with part II of the majority opinion, which concludes that the trial court did not abuse its discretion by admitting the defendant's video-recorded interview with the police in its entirety, without redaction of certain homophobic language that he had used during that interview.

process governs this court's analysis of prosecutorial impropriety claims. First, we must determine whether impropriety occurred in the first instance, and, second, we must examine whether that impropriety, or the cumulative effect of multiple improprieties, deprived the defendant of his due process right to a fair trial. See, e.g., *State* v. *Dabate*, 351 Conn. 428, 437, 331 A.3d 1159 (2025).

At the outset, I assume, without deciding, that the challenged comments of the prosecutors misstated the law governing the affirmative defense of extreme emotional disturbance under § 53a-54a (a).[2] "Proof of this defense by a preponderance of the evidence . . . entitles the defendant to a conviction of manslaughter in the first degree, instead of a conviction of murder." (Citation omitted; footnote omitted.) *State* v. *Person*, 236 Conn. 342, 351, 673 A.2d 463 (1996). "[T]he statute sets forth a standard that is objective in its overview, but subjective as to the defendant's belief." *State* v. *Elliott*, 177 Conn. 1, 7, 411 A.2d 3 (1979). Under the objective component, the reasonableness of the defendant's emotional disturbance[3] is "to be determined from the viewpoint of a person in the defendant's situation under the circumstances *as the defendant believed them to be* . . . ." (Emphasis added.) General Statutes § 53a-54a

---

[2] I also agree with the majority's conclusion that other challenged comments, including those referring to the defendant's story in support of his extreme emotional disturbance defense as "contrived" and that it would be "horrible" for the defendant to raise this defense, did not constitute prosecutorial impropriety.

[3] A person acts under the influence of an extreme emotional disturbance when his "self-control and reason are overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions. . . . [A] homicide influenced by an extreme emotional disturbance [however] is not one [that] is necessarily committed in the hot blood state but rather can be one brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then [to] react violently, seemingly without provocation." (Citation omitted; internal quotation marks omitted.) *State* v. *Person*, supra, 236 Conn. 351–52.

(a). Contrary to the majority, I conclude that these assumed misstatements of the law did not deprive the defendant of a fair trial.

To prove that prosecutorial impropriety deprived the defendant of a fair trial, "the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the [impropriety] so infected the trial with unfairness as to make the conviction a denial of due process. . . . In weighing the significance of an instance of prosecutorial impropriety, a reviewing court must consider the entire context of the trial, and [t]he question of whether the defendant has been prejudiced by prosecutorial [impropriety] . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different [in the absence of] the sum total of the improprieties. . . .

"To aid this court in determining whether a prosecutorial impropriety so infected the proceedings with unfairness as to deprive a defendant of a fair trial, this court applies the [*Williams*] factors . . . . These factors include (1) the extent to which the [impropriety] was invited by defense conduct or argument, (2) the severity of the [impropriety], (3) the frequency of the [impropriety], (4) the centrality of the [impropriety] to the critical issues in the case, (5) the strength of the curative measures adopted, and (6) the strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Sullivan*, supra, 351 Conn. 821–22. The *Williams* factors may be intertwined and overlap, and "none . . . is determinative on its own." *State* v. *Dabate*, supra, 351 Conn. 467 n.25.

In applying the *Williams* factors, I acknowledge that most seem to favor the defendant. The prosecutors' misstatements of the law were not invited by defense

argument or conduct. The challenged comments, especially the illustrative hypotheticals in the rebuttal argument, were not isolated; they were significant, rhetorical points in the prosecutors' response to the affirmative defense of extreme emotional disturbance. Cf. *State* v. *Albert D.*, 196 Conn. App. 155, 178–79, 229 A.3d 1176 (prosecutor's brief misstatements of law in "quick succession" during rebuttal argument were not frequent or severe), cert. denied, 335 Conn. 913, 229 A.3d 118 (2020). Many of the challenged comments were rendered potentially more "inflammatory . . . by the fact that the prosecutor made them during rebuttal [argument], which meant that the defense could not respond." *State* v. *Dabate*, supra, 351 Conn. 454; see *State* v. *Sullivan*, supra, 351 Conn. 813. Defense counsel in the present case deemed them severe enough to warrant an objection and a request for a curative instruction, which the trial court granted. See *State* v. *Sullivan*, supra, 822–23. Further, the state's evidence with respect to overcoming the extreme emotional disturbance defense was not overwhelming. That issue turned on the extent to which the jury would credit the defendant's statements during his video-recorded interview with the police, many of which reflected his mental health issues and misperceptions of reality. But cf. *State* v. *Courtney G.*, supra, 339 Conn. 365–66 (lack of physical evidence in child sexual assault cases does not render state's case "automatically weak" (internal quotation marks omitted)).

The *Williams* analysis is not, however, a mathematical exercise, and it is not dispositive that most of the factors appear to favor the defendant in this case. With respect to the severity of the misstatements of the law, a review of the prosecutors' closing and rebuttal arguments indicates that the prosecutors also recited the appropriate legal standard and advised the jury to follow the law as charged by the trial court. During rebuttal argument, the prosecutor stated that "the determination

you're going to have to make here is whether the defendant's conduct is reasonable based on what a reasonable person would do in the situation that [the defendant] perceived himself to be in," and that, "in determining the reasonableness of the defendant's explanation or excuse, you must measure that reasonableness from the viewpoint of a reasonable person in the defendant's situation." Although the prosecutor's statements of the law could have been more artfully phrased to clarify that it was the defendant's subjective belief as to the situation that set the parameters for the reasonableness of the emotional disturbance that precipitated the response, overall, they conveyed to the jury that it was the circumstances and perception of the defendant that mattered most in the analysis.

Mitigating the severity of the misstatements of the law are the prosecutors' multiple exhortations to the jury to follow the law as instructed by the trial court. At the start of closing argument, the prosecutor explained that, although the summations would address the law, it would be the "judge's instructions on the law that controls" in the event of any "conflicts . . . ." Highlighting the anticipated extreme emotional disturbance defense, the prosecutor then advised the jury that it would "*get an instruction on the law from the judge*" and that it should "*pay very careful attention to that instruction*," reiterating that request a short time later. (Emphasis added.) In discussing the burden of proof applicable to the defense, the prosecutor stated that the defendant bore the burden of proving mitigation by a preponderance of the evidence and that the jury should "*pay attention to that when the judge gives that instruction*." (Emphasis added.) Although I assume the prosecutor's next comment to be a misstatement of the legal standard, which focused on how a "reasonable person" would react in the circumstances of the case, that comment was also phrased as something to "*keep*

*in mind* [*when*] *listening to* [*the judge's*] *instruction . . . .*" (Emphasis added.)

With respect to the prosecutor's rebuttal argument, during which the majority of the challenged comments and hypotheticals occurred, the prosecutor stated that he agreed with defense counsel that it was the jurors' "*duty to follow the law as* [*the trial court*] *. . . give*[*s*] *it to you*" and "to determine the facts that are present[ed] in the courtroom and [to] apply the law, *most importantly*, that [the trial court] gives you to those facts." (Emphasis added.) A short time later, after asking the jury to weigh the evidence on the defense of extreme emotional disturbance and asking the first series of hypotheticals about why the defendant had chosen to kill this particular victim, the prosecutor urged the jury, "when you determine this defense . . . *pay very* [*close*] *attention to what the* [*trial court*] *instructs.*" (Emphasis added.) After explaining his view of the objective element, the prosecutor immediately asked the jury again to "[*l*]*isten to what the court says.*" (Emphasis added.)

Most significant, the trial court implemented curative measures that addressed the prosecutors' misstatements of the law. In response to an objection by defense counsel, the court granted his request to admonish the jury to the effect that "you have heard from both attorneys or both sides about . . . what the standard is, and I'm going to give you the law and you are to follow the law." The trial court then instructed the jury accordingly, highlighting, both generally and specifically, the affirmative defense of extreme emotional disturbance. The court emphasized that, "[i]f anything [the attorneys] said [during closing and rebuttal arguments] differs from what I say, you're to disregard what they said and [to] follow my instructions . . . on all issues of law, and particularly on the issue of extreme emotional disturbance." There is nothing in the record to rebut the

well settled presumption that the jury followed that instruction. See, e.g., *State* v. *Dabate*, supra, 351 Conn. 466.

Given the unchallenged jury charge on the law generally, and the trial court's identification of the extreme emotional disturbance defense as a key legal issue subject to its instructions, I see no reason to depart from Connecticut's ample body of case law holding that even general curative instructions protect a defendant's right to a fair trial by mitigating any potential harm from a prosecutor's misstatement of the law. See, e.g., *State* v. *Albert D.*, supra, 196 Conn. App. 179–80 (Prejudice from prosecutor's misstatement of law concerning expert witnesses was "reduced by the court's final instructions to the jury following closing arguments . . . that it was solely the jury's function to assess credibility and that none of the arguments made by the attorneys constituted evidence. Moreover, the court correctly instructed the jury that the law required the experts to testify in general terms."); *State* v. *Dawson*, 188 Conn. App. 532, 567–70, 205 A.3d 662 (2019) (prosecutor's misstatement of law of constructive possession three times during closing argument did not deprive defendant of fair trial, given trial court's correct statement of law to jury and prosecutor's reminder to jury to follow court's instructions), rev'd in part on other grounds, 340 Conn. 136, 263 A.3d 779 (2021); *State* v. *Gonzalez*, 188 Conn. App. 304, 338, 341–42, 204 A.3d 1183 (2019) (in rejecting claim that prosecutor's shorthand definition of home invasion charge misled jury, court relied on unchallenged jury charge and prosecutor's emphasis that trial court would provide full instructions), aff'd, 338 Conn. 108, 257 A.3d 283 (2021); *State* v. *Nicholson*, 155 Conn. App. 499, 517–19, 109 A.3d 1010 (prosecutor's misstatement regarding right to use deadly physical force for purposes of justification defense was rendered harmless by court's general instructions and reminder to follow court's

instruction on law of self-defense), cert. denied, 316 Conn. 913, 111 A.3d 884 (2015). Thus, my *Williams* analysis leads me to conclude that the defendant's right to a fair trial was protected by the curative instruction that was targeted to address the apparent misstatements of the law by the prosecutors in their closing and rebuttal arguments.

Although any impropriety in the prosecutors' closing and rebuttal arguments did not deprive the defendant of a fair trial in this case, one final observation is warranted. The majority posits that the nature of the challenged hypotheticals, along with the accompanying explanation of the governing legal principles, suggests that they were prepared in advance and were not the product of the rough and tumble of oral argument for which we need to allow "generous latitude . . . ." (Internal quotation marks omitted.) *State* v. *Sullivan*, supra, 351 Conn. 810. I agree with that observation. Nevertheless, I do not ascribe any nefarious purpose to the prosecutors from this preparation; there is nothing in the record to suggest that these comments were anything more than a misstatement of a relatively complex area of the criminal law, as was discussed at oral argument before this court. Given this complexity, I agree with the majority that prosecutors must be extremely cautious in how they communicate relevant legal concepts and make sure to adhere to the principles as described in the trial court's jury instructions or other legal authorities. See, e.g., *State* v. *Courtney G.*, supra, 339 Conn. 358.

Because I would affirm the judgment of conviction, I respectfully dissent in part.