[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Statement of the Case
The defendant, Roger Jones, has filed a Motion to Suppress Confessions, Statements and/or Admissions. In support of this motion, the defendant has alleged that:
 1. The defendant did not at any time knowingly, voluntarily or intelligently waive the right to remain silent or the right to assistance of counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article First, '8 of the Connecticut Constitution.
 2. Any and all such statements are the fatally tainted fruit of an unlawful detention, seizure and/or arrest made in violation of the defendant's rights under the Fourth and Fourteenth Amendments to the United States Constitution.
 3. Any and all such statements were made in the absence of counsel, although the right to counsel had attached.
 4. Such statements were not preceded by proper and adequate warnings of the defendant's rights under the Fifth and Sixth Amendments of the United States Constitution or Article First, § 8 of the Connecticut Constitution, or were in derogation of such warnings.
As a result of that motion, an evidentiary hearing was conducted on May 9 and 10, 2001. During that hearing, the State introduced the defendant's statements, both oral and written, his signed waiver of rights form, a consent to search form, and testimony from Detective Paul Melanson, Michael Chaffin, formerly of the West Hartford Police Department, Detective William Kinahan, Officer Robert Gulliksen, Inspector John Bannan, Jr., Inspector Lawrence Skinner, Detective Robert Moylan, Detective Gregory Brigandi, Officer Paul Roy, Detective David Goodwin and Detective Randall Law.
II. Statement of the Facts
Based upon the testimony and evidence introduced at the suppression CT Page 15801 hearing, this court finds the following facts:
On November 4, 1996, Dr. and Mrs Haugh, the residents of 50 Mohawk Drive, West Hartford were found dead in their home. The defendant had been implicated in the killing by another participant, who had given the police a detailed statement concerning the crime.
On November 8, 1996, the defendant, a 19 year old high school graduate was contacted by Detective Michael Chaffin of the West Hartford Police Department concerning an outstanding arrest warrant the West Hartford Police Department had concerning the defendant's involvement in a burglary that had occurred at 90 Norwood Ave., West Hartford. At approximately 4:00 AM, Detective Chaffin, accompanied by a number of West Hartford and Hartford police officers proceeded to 179 Palm Street in Hartford, where they knew the defendant to be. Det. Chaffin spoke to the defendant via the telephone while the officers were in position around the house at 179 Palm Street. Detective Chaffin requested the defendant to come out the front door and surrender to the police. The defendant exited the house via the rear door, and was immediately taken into police custody, handcuffed, and delivered to the waiting Detective Chaffin.
The defendant was placed into an unmarked police car, with two West Hartford police detectives, as well as an inspector from the State's Attorney's office. While looking at the defendant in the rear view mirror, Detective Chaffin advised the defendant of his constitutional rights. Detective Chaffin advised the defendant that he had the right to remain silent, that he had the right to an attorney, that if he could not afford an attorney, one would be appointed for him, that he had the right to have an attorney present during questioning, and that he had the right to stop answering any questions at any time if he chose to do so. Detective Chaffin then asked the defendant if he understood those rights. When the defendant nodded that he had, Detective Chaffin asked the defendant to inform him orally, so that he, Detective Chaffin, could hear. The defendant orally indicated that he understood his constitutional rights, and that he was willing to talk to the detective. From the time the defendant was picked up at his house, and throughout the entire episode leading to his arrest, the defendant did not appear to be under the influence of any drugs or alcohol. Although he was not very happy at being arrested so early in the morning, he was talkative. Throughout the entire proceeding, he appeared to understand what was said to him. At no time while the defendant was in the custody of the West Hartford police were the statements made by the defendant to the police audio or videotaped.
Detective Chaffin then proceeded to drive himself, the defendant, Detective Melanson of the West Hartford Police and Inspector Skinner of CT Page 15802 the State's Attorney's Office to 50 Mohawk Drive, the scene of the recent homicide for which the defendant was a suspect. Upon arriving, Inspector Skinner asked the defendant if he had ever been there, the defendant initially denied having been at 50 Mohawk, but when asked further, gave a fairly comprehensive inculpatory description of the crime which had occurred there.
The four men then proceeded to the West Hartford Police Department, and the defendant and Detective Chaffin went to Detective Chaffin's office on the third floor of the Police Department. Detective Chaffin provided the defendant with a written waiver of rights form. The defendant filled out the biographical information on the top of the form, read the five constitutional rights aloud to Detective Chaffin, initialing after each right, and then both Detective Chaffin and the defendant signed the bottom of the form. Upon completing the waiver of rights form, the defendant and Detective Chaffin began the process of completing a written statement of the defendant, on Detective Chaffin's computer, concerning the defendant's involvement in the homicides on Mohawk Drive. The defendant had the opportunity to read what was being typed into the computer, as it was being entered. Upon completing the written statement, it was printed out, and a copy was provided to the defendant to review. The defendant appeared to read the statement, and when asked if he wanted to make any changes, responded in the negative. The defendant then signed and swore to the accuracy of the statement. Upon completing the written statement, the defendant was processed and placed in a holding cell at the West Hartford Police Department. The entire process of obtaining the statement from the defendant, from when he was taken into custody, until the statement was signed and sworn to was less than five hours. At no time during this process did the defendant tell Detective Chaffin that he wanted to stop answering questions, or that he wished to speak to a lawyer. At no time during the process was the defendant threatened or promised anything.
After the defendant was booked, he was placed in a holding cell, where he was fed breakfast, allowed to sleep, allowed to use the toilet, was fed lunch, and slept some more. At approximately 2:00 P.M. the defendant was escorted by Detective Chaffin to the office of Detective Moylan. Detective Moylan showed the defendant his waiver of rights form, and asked the defendant if he was willing to give a written statement concerning items involved in the homicide. The defendant agreed to give a written statement. Detective Moylan and the defendant then engaged in a conversation concerning the items which Detective Moylan was interested in. The detective gave the defendant the opportunity to make changes in what was written in the statement, which the defendant took advantage of. After completing the statement, the defendant was given the opportunity to read the written statement, and then signed the statement CT Page 15803 and swore to its truth. No one present addressed the defendant in a raised voice. During the course of taking the second statement, the defendant never indicated to the police that he wished to stop, or that he wanted to speak to a lawyer. The defendant never indicated that he was hungry, thirsty, tired or uncomfortable. The entire process of taking the second statement took less than two hours. The defendant did not appear to be sleepy, and spoke in a clear, coherent and educated manner.
Detective Moylan also asked the defendant to provide the police with a consent to search the property located at 179 Palm Street, in Hartford. After explaining to the defendant what a consent to search was, the defendant agreed to provide the consent to search to the police, and filled out the form with the assistance of Detective Moylan. No one raised their voice to the defendant during the time it took to prepare the consent to search. The defendant was not threatened or promised anything in exchange for providing the consent to search.
The defendant was in the custody of the police commencing at the time he was arrested at 179 Palm Street, in Hartford, and continually throughout the period of time related above. The defendant is able to understand the English language and is able to read and write. Furthermore, this court finds that the conduct of the police during their interactions with the defendant, although not interrogations in the sense of question and answer, were interrogations for the purpose of the analysis of this motion.
II Conclusions of Law
The defendant, in his motion, has raised claims of unconstitutional conduct by the police arising under both the federal and Connecticut constitutions. The defendant has not however addressed or briefed independently the issues as related to the Connecticut Constitution, and therefore all of the analysis of the defendant's claims will be done under the federal constitution. See State v. Anonymous, 240 Conn. 708,715, 694 A.2d 766 (1997).
This court will treat claims one, two and four of the defendant together, as they are intimately linked in the resolution of the defendant's motion. Claim three will be treated independently.
The fourth claim of the defendant is that he was not informed of hisMiranda rights. There was credible evidence that the defendant was in fact informed of those rights, both orally while in the car while travelling to the West Hartford Police Department, as well as in written form upon arriving at the police station. CT Page 15804
The first claim of the defendant is that he "did not at any time knowingly, intelligently or voluntarily" waive his Miranda rights. This court has found that the defendant was advised of his rights. Notwithstanding that finding, in the context of the admissibility of the defendant's statements, a bare "advisement" of rights is insufficient to find that the defendant's constitutional rights were waived. State v.Wilson, 183 Conn. 280, 439 A.2d 330 (1981). To allow the statements to be admitted into evidence at trial, the State must show, by a preponderance of the evidence, that the defendant "knowingly and intelligently" waived his constitutional rights. State v. Toste, 198 Conn. 573, 504 A.2d 1036
(1986).
The question of whether a defendant has "knowingly and intelligently" waived his rights is not one of form, but rather whether the defendant infact knowingly and intelligently waived the rights delineated in theMiranda case. State v. Alfonso, 195 Conn. 624, 490 A.2d 75 (1985). The standard for waiver is that announced in Johnson v. Zerbst, 304 U.S. 458,58 S.Ct. 1019, 82 L.Ed. 1461 (1938), "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege . . . [which] must depend, in each case, upon the pertinent facts and circumstances surrounding that case, including the background, experience and conduct of the accused". State v. Hafford, 252 Conn. 274, 746 A.2d 150
(2000). The State must demonstrate that the defendant understood his rights, and that the defendant's conduct indicated that he did, in fact, waive those rights. State v. Taste, supra, 198 Conn. 579.
The first test of a "knowing and intelligent" waiver of rights is the competency of the defendant to understand and act on his constitutional rights. State v. Toste, supra, 198 Conn. 580. Facts to consider include the defendant's experience with the police and the warning; his level of intelligence; his age; his education; his ability to read and write in the language the waiver was given; whether the defendant was intoxicated; his emotional state; and the existence of any mental disease, disorder or retardation. State v. Santiago, 245 Conn. 301, 321,715 A.2d 1 (1998)
With respect to defendant's intelligence, no evidence was introduced regarding any deficiency in this area. See State v. DeAngelis,200 Conn. 224, 511 A.2d 310 (1986).
Credible evidence was also introduced that the defendant was 19 years old, an adult, at the time he made the statement. See State v. Perez,218 Conn. 714, 591 A.2d 119 (1991) (statement of 14 year old admissible).
Evidence was admitted which indicated that the defendant had graduated CT Page 15805 from high school, and could read and write. Limited education alone does not preclude a finding of voluntariness. State v. Toste, supra,198 Conn. 581 (the defendant operated at about a 6th or 7th grade level). The issue was raised that the defendant may not have been able to read the waiver form, due to his not having his glasses in his possession. However no evidence was produced on the issue of whether or not the defendant was able to read without his glasses. The court is under no obligation to supply evidence which is lacking. State v.Harris, 188 Conn. 574, 452 A.2d 634 (1982); cert. denied, 460 U.S. 1089,103 S.Ct. 1785, 76 L.Ed.2d 354 (1983). Therefore the evidence before the court consists of the testimony of the police officers who testified that the defendant appeared to read what was on the form, and the written waiver form, signed by the defendant, which indicates that the defendant could and did read the waiver form. The State has met its burden by a preponderance of the evidence that the defendant could read. State v.Williams, 65 Conn. App. 59 ___ A.2d ___ (2001)
As to the possible level of intoxication, credible evidence was introduced that defendant appeared sober, and was not under the influence of drugs or doctor's medication.
Finally no evidence was introduced that defendant had any mental disease, disorder or retardation which would impair his ability to understand; or that the defendant was emotional throughout any part of the interview process. The court is under no obligation to supply evidence which is lacking. State v. Harris, 188 Conn. 574, 452 A.2d 634
(1982); cert. denied, 460 U.S. 1089, 103 S.Ct. 1785, 76 L.Ed.2d 354
(1983).
Based on these findings, the court concludes that the defendant had the ability to understand, and did understand his constitutional rights.
The second part of the inquiry is whether the defendant waived those rights. State v. Toste, supra, 198 Conn. 582. A waiver can be determined be either an express waiver, or implied waiver based on the accused's conduct. State v. Harris, supra, 188 Conn. 580. Here the evidence points to both an express waiver and an implied waiver. The defendant affirmatively indicated to Detective Chaffin that he understood, and agreed to talk about the incident. Upon arriving at the West Hartford Police Department, the defendant initialed the waiver of rights form after language enumerating each right, and appeared to read the waiver language on the form, prior to signing and putting the date and time on the bottom. Additionally, defendant after orally acknowledging he understood and agreed to waive his rights, proceeded to tell Detective Chaffin about his involvement in the incident, and agreed to give a written statement, which the defendant signed and swore to. Both the oral CT Page 15806 and written statements, "[u]nder these circumstances the defendant's expressed willingness to speak [and provide a written statement] constitute an explicit affirmative act evidencing waiver . . .". Statev. Harris, supra, 188 Conn. 580.
On the evidence presented, this court finds that defendant could understand and act to protect his rights; and did both expressly, and implicitly waive those rights by providing the police with both an oral and written statement concerning his involvement in the October, 1996 killings.
Defendant next claims in his motion that the statements he made to the police were not made voluntarily, and should therefore been excluded from the evidence at trial. The admission into evidence at trial of an involuntary confession violates due process, totally independent ofMiranda and the 5th Amendment. State v. Hafford, supra, 252 Conn. 298. The test of whether a confession is voluntary or involuntary revolves around the circumstances of the confession. State v. Pinder, 250 Conn. 385,736 A.2d 857 (1999). A statement can only be found to be voluntary if it is the product of an essentially free and unconstrained choice by its maker. State v. Hafford, supra, 252 Conn. 299, citing Schneckloth v.Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, L.Ed.2d 854 (1973). Facts to consider in determining whether the defendant's will was overborne include his age; his education; advice concerning his constitutional rights; the length of detention and the repeated and prolonged nature of the questioning; and the use of physical punishment, including but limited to a deprivation of food or sleep. State v. Pinder, supra,250 Conn. 419.
As stated previously, the defendant, at the time of the questioning, was a 19 year old adult who had graduated high school; and was advised of his constitutional rights prior to giving his statements. The defendant was only in the custody of the police for a number of minutes before he agreed to talk to Detective Chaffin concerning the incident. The total time it took to prepare and preserve the all of the oral and written statements was less than sixteen hours, during which time the defendant was allowed to, and did sleep. See State v. Madera, 210 Conn. 22,554 A.2d 263 (1989) (eighteen hours, confession found to be voluntary). Additionally, not only was defendant not deprived of food, but was provided with both breakfast and lunch from McDonald's by the West Hartford Police Department. Finally there was no evidence introduced that the defendant was coerced, through the use of threats, promises or coercive conduct, into providing a statement to the police. On these facts, this court concludes that defendant's statements to the police officers, including Detective Chaffin and Detective Law were voluntary, and not the product of the defendant's overborne will. CT Page 15807
The second claim that defendant cites in his motion for suppression of the statements is that the statements were obtained as the fruit of an illegal arrest. The only evidence introduced at the hearing on the motion was that defendant was arrested pursuant to an arrest warrant, served by the West Hartford Police Department. Defendant did not introduce any evidence attacking the sufficiency of the warrant and therefore this court finds that the arrest was made pursuant to warrant, and the statements obtained were not the fruit of an illegal arrest.
The last claim by the defendant is that the statements were obtained "in the absence of counsel, although the right to counsel had attached." "[T]he right of an accused to have an attorney present during custodial interrogation by the police [is] an essential component of thefifth amendment privilege against self-incrimination. In Miranda, the court held that when an accused person indicates in any manner at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning, and the police must stop the interrogation." (Citations omitted, internal quotation marks omitted) State v.Anonymous, 240 Conn. 708, 720, 694 A.2d 766 (1997). The United States Supreme Court "has since narrowed this aspect of the Miranda decision by emphasizing that the right to the presence of counsel during custodial interrogation . . . is a prophylactic rule . . . and . . . that an accused's request for counsel under Miranda must be objectively unequivocal." (Citations omitted, internal quotation marks omitted) Statev. Anonymous, supra, 240 Conn. 721. There was no evidence that the defendant at any time asked for or mentioned wanting a lawyer. In fact the testimony was that at no time did the defendant ask for an attorney. In the absence of an unequivocal request, the police are under no duty to cease questioning. State v. Rollins, 245 Conn. 700, 705, 714 A.2d 1217
(1998). Therefore this court finds the right to counsel not to have attached during the time the defendant was being questioned by the police.
The State has met its burden that the defendant's statements were made after proper and adequate warnings, as mandated by Miranda followed by a knowing, intelligent and voluntary waiver of his constitutional rights. The State has also proven that the defendant had the capacity to understand his rights, and expressly and implicitly waived them. There was no evidence offered to indicate that the defendant's will was overborne. Additionally, the State has proven that the statements were obtained after a lawful arrest. Finally, there was no evidence offered that the defendant had requested an attorney, and therefore the right to counsel had not yet attached. Therefore defendant's arguments in favor of suppressing the statements must fail. Defendant's Motion to Suppress Defendant's Statement is denied. CT Page 15808
By the Court,
Mullarkey, J.